## GIBBS *v*. STATE

No. 39247          February 7, 1955          77 So. 2d 705

*Sims & Sims,* Columbus, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

4

GILLESPIE, J.

Newman Gibbs, the appellant, was jointly indicted with Xerxie Taylor and Melvin Pickle for the murder of one Laughton Pounders. Severance was granted and Taylor was first tried and convicted of manslaughter. Then Gibbs was tried and convicted of manslaughter, and he appeals.

Pounders was killed in or near the road that runs in front of a "honky-tonk" operated by George Sisk in the eastern part of Monroe County. The Sisk place was situated about 100 or 200 feet from the road. A light hung from a tree in front of the establishment. It was Sunday, and various parties, including those mentioned herein, had been coming and going to and from the place all day as the spirits moved them. Most of them had been drinking beer or whiskey and some had been dancing. About 8:30 P.M., Gibbs and his wife got into an argument; they went out of the Sisk place toward the road, quarreling as they went. When Gibbs and his wife got to the ditch beside the road, Gibbs struck his wife and knocked her into the ditch; Mrs. Gibbs began screaming and calling out, "help, murder" — prophetic words. What happened in the ensuing moments during which Pounders was killed is conflicting to a considerable extent.

The State's two main witnesses were Dill and Hughes. We shall first state the version given by Dill: When Gibbs knocked his wife down into the ditch, he walked away leaving her screaming; Pounders, Taylor and Pickle ran out of the Sisk establishment; Pounders was the first to reach Mrs. Gibbs, who was still lying in the ditch; Pounders stooped over to pick up Mrs. Gibbs; Taylor, a brother of Mrs. Gibbs, ran up and hit Pounders; Pounders straightened up, and, being a large man and an amateur boxer, landed a blow that knocked Taylor approximately twenty feet; Taylor got up and charged at Pounders a second time, and Pounders again

landed a blow and Taylor went down; then Gibbs came up from Pounders' right rear and grabbed him about the neck or shoulders; then Pickle grabbed Pounders by the legs, whereupon Pounders said, "turn me loose and fight me one at a time"; Taylor charged into Pounders again and stabbed him twice with a knife, once in the shoulder and once in the neck. Pounders began bleeding from the neck (his jugular vein was severed); Taylor backed up and witness Dill took his knife, closed it, and placed it in Taylor's pocket. Dill then took Pounders to the hospital where he shortly expired.

It appears that the fight was spontaneous; there was no conspiracy between Pickle, Gibbs, and Taylor, nor circumstances from which preconcert could have reasonably been inferred.

Hughes, another State witness, said he was standing around some trees in front of the Sisk place when Gibbs and his wife came out of the building; that Taylor and Pounders came out running "just like two mules hitched to a plow," meaning they were running side by side. Hughes said that Dill did not arrive on the scene in his automobile until after the fight was over, and Hughes did not see Pounders knock Taylor down twice as testified by Dill. Dill said that he did not see Hughes at all. Taylor admitted the cutting and said that Gibbs was not there when he cut Pounders. Hughes stated that Gibbs was the first one to strike Pounders.

Appellant made a statement to officers after his arrest in which he admitted that he took hold of Pounders, and after Taylor hit him he got blood on his (Gibbs') shirt. Appellant admitted knocking his wife into the ditch. He testified at the trial that he left her in the ditch and walked down the road, after which he saw people "bunched up"; that he was not holding Pounders when the cutting took place; that he did not see the fight and did not know who started it; that he got blood on his shirt when he went back to where the people were

and Pounders ran into him; that he suspected his brother-in-law, Taylor, did the cutting because he knew Taylor was pretty quick with a knife. Gibbs searched Taylor for a knife after the killing, according to his evidence.

The State's instructions nos. one and two presented to the jury the issue of whether appellant "aided, abetted and assisted" Taylor in killing the deceased. Appellant contends this was error in that there was no evidence that he aided, abetted or assisted Taylor in the killing. This contention has given the Court much concern.

"In the absence of a conspiracy or common design, the evidence must be sufficient, even in cases where the killing occurred in the course of a joint assault or affray, to show either that accused struck the fatal blow or aided and abetted therein. To justify the conviction of one who was not the actual slayer, where the proof does not show any prearrangement, conspiracy, or common design, the evidence must be sufficient to show that accused aided or abetted the actual slayer by overt act of assistance or oral expression of encouragement." 41 C. J. S., Homicide, Sec. 322.

In order to render one responsible as an aider or abettor, it is essential that he share in the criminal intent of the direct actor. 40 C. J. S., Homicide, Par. 9, p. 842. "The common intention need not be formed before convening at the place of the crime. It may have arisen on the spur of the moment, but it must exist at the time the crime is committed, and not merely before or after." 22 C. J. S., Criminal Law, Sec. 87, p. 157. "Aiding and abetting involves some participation in the crime and this may be evidenced by word, act, or deed." 22 C. J. S., Sec. 88, ps. 158-159.

We are of the opinion that there was not sufficient evidence that Pounders was killed as the result of a conspiracy. Therefore, the act of Taylor in bringing about the death of Pounders cannot be chargeable to ap-

pellant, unless during the fight between Pounders and Taylor the appellant aided and abetted in the act which caused the death of the deceased. ██ ■ We think there was sufficient evidence to go to the jury on whether or not appellant aided and abetted Taylor in causing the death of Pounders. Taylor and appellant were brothers-in-law; appellant knew Taylor was "quick with a knife", and from the fact that appellant searched Taylor for a knife after the cutting, the jury could properly have inferred that appellant knew that Taylor was armed with a knife and would probably use it in the fight; appellant was holding Pounders around the shoulders or neck, and Pickle was holding Pounders' legs, and no one was holding Taylor. There is no showing that appellant was trying to stop the fight; in fact, Pounders' statement recognized that the three—Taylor, Gibbs, and Pickle—were all fighting him. The jury was warranted in inferring that appellant reasonably expected and intended that Taylor would inflict serious bodily harm or death to Pounders. The jury also had a right to consider the testimony of appellant that he was not present when Pounders was fatally stabbed, from which they could draw appropriate inferences as to his intent, since it was proven that he was present and actively engaged by holding Pounders.

The proof was sufficient that appellant did in fact actively engage in assisting Taylor when the cutting took place. It narrows down to the question of intent on the part of appellant. If Taylor's act in inflicting the fatal wound was his independent act, and if appellant did not share in Taylor's design, then appellant is not responsible. Prine v. State, 192 Miss. 726, 7 So. 2d 555, and cases therein cited. In the Prine case the act of the father in shooting the deceased was an act complete in itself. In that case there was no prearrangement, and there was no evidence that the son, in any manner, aided, abetted or assisted the father. We do

not think the principle laid down in the Prine case is applicable here.

One rendering aid to another is presumed to share in the latter's intent, and this presumption will persist until overcome by the evidence. 22 C. J. S., Criminal Law, par. 585, p. 901. The jury had a right under all the facts and circumstances of this case to find that the assistance rendered Taylor by appellant was done with the intent on the part of appellant to inflict great bodily harm or death on the deceased. The instructions given the State were justified under the facts.

The other two assignments of error require no discussion. We hold that there was no reversible error in the trial of this case.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.