289 So.2d 905 (1974)
King George SCALES
v.
STATE of Mississippi.
No. 47573.
Supreme Court of Mississippi.
February 11, 1974.
Townsend & McWilliams, Drew, for appellant.
A.F. Summer, Atty. Gen., by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
Appellant King George Scales was indicted, tried and convicted in the Circuit Court of Sunflower County for the crime of murder in the killing of James A. Meeks. He was sentenced to serve a life term in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
James A. Meeks was employed as sergeant at Camp 11 at the State Penitentiary and lived with his wife and two small children *906 on the grounds of the institution. Appellant, an inmate serving a life sentence for murder, worked as a houseboy for the Meeks.
On the afternoon of September 12, 1972, about 5 p.m., the Parchman Hospital received a call requesting that an ambulance be sent to the home of Sgt. Meeks. Dr. Arnold Julio and two trusties went by ambulance to the Meeks' home. They knocked on the door and no one answered. After waiting a few minutes appellant came to the door, opened it slightly and told the men that no one there had called an ambulance and that nothing was wrong. About this time W.P. Black, an investigator for the Mississippi Highway Patrol assigned to the penitentiary, arrived at the Meeks' home. Black heard the children crying and noticed that Scales was not wearing his shoes and that the fly to his pants was open. Black told Scales to open the door, and he then went into the bedroom where he observed Mrs. Meeks lying across the bed with her hands behind her back. She was nude except for a shirt pushed up around her neck. She told Black to do something for her husband who was in the living room. Black went immediately into the living room where he saw Sgt. Meeks lying on the floor. Blood was oozing from his nose and mouth, and his eyes were glazed. He called Dr. Julio who came immediately, examined Meeks, and found that he had died from a bullet wound in the heart.
King George Scales, after being warned of his rights, wrote out three statements in his own handwriting admitting that he fired the shots that killed Sgt. Meeks. The first of these statements was written two days after the murder. The second about two weeks later and the third about a month after the second statement.
Although there are some minor variations in the details of each confession, the three are essentially the same. According to the confession of Scales, he started to work for the Meeks in June 1972. During the ensuing weeks his relations with Mrs. Meeks became more intimate, ultimately resulting in sexual intercourse on three occasions. About August 28, Mrs. Meeks approached Scales with a scheme whereby he was told he could make some easy money. She later told him of her desire to get rid of her husband and told Scales that she would give him $10,000 to take the blame for her husband's death and leave her out of it. Scales expressed doubt that they could get away with murder of her husband, but Mrs. Meeks assured him that they could and that she would take care of the details. He said that it was arranged that the plan would be carried out on September 12. On that day he carried out Mrs. Meeks instructions by procuring Sgt. Meeks' pistol and a shotgun from the closet where they were kept. He hid the shotgun under a mattress on the porch. He placed the pistol where it would be accessible when Sgt. Meeks came home from work. When Sgt. Meeks came in, he found the scantily clad Mrs. Meeks and Scales in a compromising position on the sofa. Sgt. Meeks rushed into the dressing room and Scales and Mrs. Meeks got off the sofa. When Sgt. Meeks returned, Scales pointed the pistol at him and told him to get over by the closet which the Sergeant did. He said that Sgt. Meeks then started moving toward him. Mrs. Meeks told Scales to shoot her husband or he will kill us. Scales said he then fired the fatal shots. After the shots were fired Scales returned to Camp 11, asked for and was given permission to return to the Meeks' home, supposedly to babysit. Upon his return, Mrs. Meeks instructed him to tie her hands behind her back, undress and get into bed with her. It was at this point that the ambulance arrived at the Meeks' home and Scales went to the door and told them nothing was wrong.
During the course of the trial, the three handwritten statements were introduced into evidence, and their admission into evidence is not questioned on appeal.
*907 Appellant testified on his own behalf. His account of the details leading up to the killing were substantially the same as those in his confession, except as to the point of who actually fired the fatal shots. He testified that Mrs. Meeks told him to take the children out in the yard, which he did. Only minutes later, he heard shots fired. When he returned to the house, he found Sgt. Meeks lying on the floor. His defense for his action was that he was afraid not to agree to take the blame for the killing and to carry out the preliminary instructions. He testified that when Mrs. Meeks first approached him with the plan to dispose of her husband, he refused to have any part of it. Mrs. Meeks then threatened to accuse him of raping her if he did not agree to the plan. Because of the threat from Mrs. Meeks, he agreed to take the blame on her promise to pay him $10,000. However, it is clear from his testimony that after agreeing to the plan under the alleged duress, he never made any attempt to withdraw his cooperation. Although the alleged threat was made several days before the killing, appellant admitted on cross examination he made no attempt to tell anyone of the scheme to kill Sgt. Meeks. He did say that he talked with Sgt. Meeks three days before the killing and asked him to transfer him to another job, but he did not tell the sergeant why he wanted the transfer. Also, he stated that when the killing occurred, he was ready to and did take the blame for the killing.
Mrs. Meeks was not called as a witness by either the state or the defense.
Appellant's assignment of error is as follows:
1. The Court erred in granting State's instructions 2, 5, and 7, as they assume facts not in evidence and thereby instruct the jury that the appellant could be found guilty of murder as an "aider and abettor," and no proper, legal definition is given for "aiding and abetting."
2. The Court erred in granting State's instructions 2, 5, and 7 as they instruct the jury that the appellant could be found guilty of murder as an "aider and abettor" even in the absence of a person charged or indicted as the principal perpetrator of the felony.
We find no merit in appellant's contention that there was no evidence produced at the trial that would support a finding of aiding and abetting. It was the theory of the state that in the presentation of its case, that appellant actually fired the fatal shot that killed Sgt. Meeks, but after appellant testified and denied that he fired the shots, the state then requested, and the court properly granted the instructions in question. From appellant's own testimony and the details of his confessions, it is clear that he not only agreed to take the blame for the killing of Sgt. Meeks, but he also carried out the preliminary instructions by procuring the gun used in the killing and by placing it where it would be accessible to the slayer.
In West v. State, 233 Miss. 730, 103 So.2d 437 (1958), Bell, Jones and West were at the home of Robinson. Trouble developed between Jones, Bell and Robinson. Bell requested West to take him to get his gun and told him he was coming back to kill Robinson. West agreed to do so, and they picked up Jones who also went to get his gun. West drove Bell and Jones to the home of Bell. Bell procured his gun and Jones walked to his home and got his gun. West then drove both men to within about 400 yards of the Robinson home. Bell and Jones got out of the car and proceeded to Robinson's home and killed him. West was charged with murder and convicted of manslaughter. On appeal West argued that his acts and conduct were not sufficient to make him guilty of any crime. In affirming this conviction this Court said:
The appellant was indicated and tried under Section 1995, Mississippi Code of 1942, which reads as follows:
"Every person who shall be an accessory to any felon, before the fact, *908 shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not."
The evidence on the part of the State shows that the appellant aided, assisted and encouraged the murder. Dean v. State, 85 Miss. 40, 37 So. 501; Wynn v. State, 63 Miss. 260; Walters v. State, 218 Miss. 166, 65 So.2d 465; Noble v. State, 221 Miss. 339, 72 So.2d 687; Goss v. State, 205 Miss. 177, 38 So.2d 700. "Aiding and abetting involves some participation in the criminal act" and this may "be evidenced by some `word, act, or deed.'" 22 C.J.S. Criminal Law § 88, pp. 158-159. Gibbs v. State, 223 Miss. 1, 77 So.2d 705. (233 Miss. at 733, 103 So.2d at 439).
Appellant's own testimony as well as the details of his confession support the proposition that if appellant did not actually fire the fatal shots, he aided, assisted and encouraged the murder.
Appellant also contends that it was error for the trial court to give instructions on aiding and abetting without properly defining the terms for the jury. Appellant does not contend that the nature and elements of the crime of murder were not adequately defined in the instructions. Instruction Number 7 is in the same language as was one of the instructions involved in Gilmer v. State, 271 So.2d 738 (Miss. 1973). There appellant contended that the instruction was defective because (1) it stated an abstract principle of law without relating it to the facts of the case, and (2) it assumes an essential element of the crime. We held that the instruction did not assume the essential elements of the crime and the mere fact that an instruction is abstract is not necessarily cause for reversal. Likewise, the fact that the instructions in this case did not define the terms of aiding and abetting and did not relate the instruction to the facts of the case is not cause for reversal under the facts and circumstances of this case.
Appellant's second assignment of error raised the question of whether another must be indicted or charged as principal before a person can be convicted as an aider and abettor. Appellant argues that since a principal must exist before there can be an aider and abettor, it is incongruent to instruct the jury that appellant can be guilty of murder as an aider and abettor where no other person has been charged or indicted as the actual perpetrator of the crime. We find no merit in this contention. Both by common law and by statute, appellant was a principal and his guilt in no wise depends upon the guilt or innocence, the conviction or acquittal of any other participant in the murder. There was ample evidence from which the jury could find appellant aided and abetted in the murder of Sgt. Meeks. There was also ample evidence from which the jury could find that he actually fired the shots that killed Sgt. Meeks, and in either event he was guilty of murder. Huff v. Edwards, 241 So.2d 654 (Miss. 1970); Wages v. State, 210 Miss. 187, 49 So.2d 246 (1950).
After a careful review of the record in this case we find that appellant received a fair trial, wherein he was represented by able counsel, and the evidence upon which he was convicted leaves no room for reasonable doubt that he was guilty of murder. There being no prejudicial error in this case, it must be and is affirmed.
Affirmed.
SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.