486 So.2d 360 (1986)
Frank Talbert MALONE
v.
STATE of Mississippi.
No. 56053.
Supreme Court of Mississippi.
February 26, 1986.
Rehearing Denied April 23, 1986.
*361 Jayne L. Buttross, Joseph A. Runnels, Jr., Gulfport, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal is by the mastermind of a Gulf Coast diamond heist from his conviction as an accessory before the fact of armed robbery. Here he questions the trial judge's instruction of the jury regarding the elements of the offense charged, the prosecutor's innuendo that he is guilty by association with others, and the weight of the evidence. We find no error on three points tendered and affirm.

II.

A.
At about 9:30 p.m. on the evening of January 16, 1982, Virginia Guilbeau returned to her home on Fire Tower Road in Hancock County, Mississippi, checked her mail, drove up to her door. She loaded her arms with purchases made that day as well as her purse and began to walk to her front door. Guilbeau was carrying a pistol at the time, as was her custom. As Guilbeau put the key in her front door, someone came up behind her and started beating her with a "slapjack". The assailant, a lone woman, directed Guilbeau to "give me all of your diamonds" and to "lay down and don't move". Guilbeau laid down and pulled her head up under her car, "thinking that if they shot me anywhere, I would survive, other than my head". The assailant took from Guilbeau thirteen diamond rings as well as a diamond watch and $3,000 in cash. One of the rings contained a 4.91 carat diamond with the estimated value of $65,000.
After her assailant left, Guilbeau got in her car and drove to her sister's house and made three calls  to Jim Conley whom she thought her friend, to her lawyer, and to the sheriff's department. Guilbeau had known Conley for over ten years as he had worked with her husband in the contracting business. Guilbeau and her husband were separated (he was in the Philipines and the two were having marital difficulties), and Jim Conley had been a frequent visitor to Guilbeau's home. Guilbeau had extensive security devices at her house including burglar bars, an electric gate, and an alarm system which had to be turned off within seconds of unlocking the front door  all of which Conley was aware of. Conley was also aware of Guilbeau's practice of carrying a gun in her hand when traveling from her car to her front door. Guilbeau had talked to Conley on the morning of January 16, 1982, the day of the robbery and he was aware of her plans for the day  where she was going and when she was going there and when she intended to return home.
Marilyn Page was arrested in Jackson, Texas, the following month. Page admitted that she was Virginia Guilbeau's assailant and implicated Frank Talbert Malone, Defendant below and Appellant here, in the jewelry robbery. The facts subsequently developed through Page include:
 That in January of 1982 she was living in the Cherie Apartments in Pascagoula.
 That she had known Frank Malone since February of 1979.
 That Frank Malone called her on the evening of January 15, 1982, at home and asked her to come over to his house in Gulfport as early as possible on the next day.

*362  That she and Robert Stewart went to Frank Malone's house about 9:30 on the morning of January 16th, the day of the robbery.
 That she, Stewart and Frank Malone went to Sam Buchanan's trailer.
 That she had never met Sam Buchanan before, nor Jim Conley who was also there.
 That she and Jim Conley left the trailer and went to the Security Building to plan a robbery of Virginia Guilbeau in the Security Building.
 That she refused to go through with the robbery at the Security Building at which point Conley took her to Guilbeau's home and then back to Buchanan's trailer.
 That later that night Sam Buchanan drove her back to Virginia Guilbeau's for the purpose of getting her diamonds; Sam Buchanan dropped her off and waited down the road until the job was done at which time they returned to Frank Malone's house.
 That she turned the diamonds over to Frank Malone and that Frank and Sam went through the contents of the purse.
 That also at Frank Malone's house was a jeweler by the name of Dale and a girl named Betty.
 That Frank Malone gave her five $100 bills for bringing the diamonds to him.
 That Frank Malone and Dale Bissett began breaking down the diamonds, i.e. taking them out of their settings.
 That that was the last time that she saw Frank Malone.
Marilyn Page emphasized Malone had given her the money himself after the robbery on the night of January 16, and that he had not acted at the direction of Sam Buchanan. She further emphasized that Malone and Dale Bissett were the ones breaking down the pilfered diamonds that night and that Dale was already at Malone's house, that no phone call was made to get him there. Frank Malone was the first one to ask her when she came in the door if she got the 4.9 carat diamond, and Bissett asked if she was sure she got the right one because they both knew there was also a phony one.
Robert Stewart had been living with Marilyn Page. He went with her to see Frank Malone on January 16, 1982. After picking up Malone, Stewart and Page drove to Sam Buchanan's house. Malone, Conley, Buchanan and Page retired to the back room leaving Stewart alone in the living room with an older man whose name he did not know. Stewart left Buchanan's with Conley and Page and was directed to drive them by the Security Building in Gulfport. The three then drove past "this woman's house" and Stewart was asked to participate in the crime. He waited at the house until Page and Buchanan returned and watched Buchanan attempt to burn the victim's purse in the yard with his cutting torch.
Frank Malone stated that his occupation was buying and selling jewelry and guns.[1] Malone claimed that he first met Jim Conley through Sam Buchanan. Malone was extremely interested in getting to know Conley because he supposedly knew the location of a shipwreck with old Spanish gold coins on it. Malone said he contacted Marilyn Page for Buchanan because he had her unlisted number and was not supposed to give it to anyone. He said that he took Marilyn Page over to Sam's on the morning in question because he wanted to talk to him and he had a car at Sam's that Sam was supposed to be fixing. He was only at Buchanan's for five minutes at the most, and no discussion of a robbery took place during that time.
According to Malone, Buchanan called him about 11:00 that night and said that he had a diamond he wanted to show him. After inquiry he decided that the diamond was out of his league and called Dale Bissett *363 to come to his house because Sam was going to bring the stone there. Bissett upon looking at the diamond stated that he didn't have that kind of money but he knew a jeweler in Wisconsin who could afford it. Buchanan said that he had to have the money that night, and they began breaking the stones down (taking them out of their settings) and Bissett handed Buchanan $1500 of which $500 Sam peeled off and handed to Malone motioning to Marilyn. Malone gave the $500 to Marilyn. At that point everyone left. Malone stated that none of the jewelry was left in his possession and he did not know that the jewelry represented any type of robbery.

B.
This criminal prosecution was commenced on July 11, 1982, when the Grand Jury of Hancock County returned an indictment charging Frank Talbert Malone and four others[2] with the armed robbery of Virginia Guilbeau. After a severance was granted the matter was called for trial in Circuit Court on January 24, 1983. In due course thereafter, the jury returned a verdict finding Malone guilty of armed robbery. As the jury was unable to agree upon punishment, the Circuit Court sentenced Malone to the custody of the Mississippi Department of Corrections for a term of eleven (11) years. See Miss. Code Ann. § 97-3-79 (Supp. 1985).
Thereafter, Malone filed a motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial. On February 4, 1983, this motion was overruled and denied. Malone now appeals to this Court.

III.
The crime for which Malone has been indicted, tried and convicted is armed robbery; that is, the felonious taking of the property of another from that person and against her will by violence or by putting such person in fear of immediate injury. Miss. Code Ann. § 97-3-79 (Supp. 1985). The evidence reflects that Marilyn Page's wielding of the slapjack and wresting of the diamonds from Ms. Guilbeau easily falls within and establishes all of the elements of the crime of armed robbery.
Malone, however, was not present at the time of the armed robbery. His culpability is as an accessory before the fact. Under our law, Miss. Code Ann. § 97-1-3 (1972):
Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not.
What renders one an accessory before the fact is well settled. In Crawford v. State, 133 Miss. 147, 97 So. 534 (1923), this Court ruled that to aid and abet in the commission of a felony, one must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." 133 Miss. at 151. (Emphasis added.) See James v. State, 248 Miss. 777, 780, 160 So.2d 695, 696 (1964) (An accessory before the fact must actually advise and procure commission of the crime, encourage, aid and abet its commission, help plan the crime with the understanding he will benefit from it.); Shedd v. State, 228 Miss. 381, 386, 87 So.2d 898, 900 (1956) (Aiding and abetting involves a community of unlawful purposes at the time of the act and some participation in the act in furtherance thereof.); Gibbs v. State, 223 Miss. 1, 6, 77 So.2d 705, 707 (1955) (Aiding and abetting involves participation in the criminal act); Williams v. State, 463 So.2d 1064, 1066 (Miss. 1985) ("One who aids and abets another is an accessory before the fact and is guilty as a principal").
In this context we consider Malone's argument that submission to the jury of Instruction No. C.00 was error. The vice said to be found in the instruction is that it submits Malone's case to the jury on a criminal conspiracy theory, that it does not *364 define "accessory before the fact" or "aiding and abetting", and that it does not require a finding of specific intent.
The instruction at issue reads as follows:
The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Frank Talbert Malone, Marilyn Page, and others conspired together to commit a robbery of Virginia Guilbeau on the time and date charged and testified about and that in pursuance to said conspiracy or agreement, if you believe from the evidence beyond a reasonable doubt there was such a conspiracy or agreement, that Marilyn Page did wilfully, unlawfully and feloniously commit an assault upon the person of said Virginia Guilbeau with a deadly weapon, to-wit: a pistol, and did then and there feloniously put her, the said Virginia Guilbeau, in fear of immediate injury to her person by the exhibition of said deadly weapon as aforesaid, and with the unlawful and felonious intent to steal, the said Marilyn Page did then and there in pursuance of said conspiracy or agreement unlawfully, willfully and feloniously take and steal and carry away from the person and in the presence of and against the will of said Virginia Guilbeau, certain personal property, to-wit: diamond rings and a diamond watch charged and and testified about, then the defendant is guilty of armed robbery, if you so believe from the evidence beyond a reasonable doubt as aforesaid, and it is your sworn duty to so say by your verdict.
The complaint that the jury was charged on the crime of conspiracy may be quickly disposed of. One who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony. That the word "conspiracy" is one we employ to label certain conduct we declare criminal in no way precludes use of the verb "to conspire" and the noun "conspiracy" to connote the sort of participation and involvement in the planning of a crime at least in part requisite to one being guilty as an accessory before the fact. Miss. Code Ann. § 97-1-3 (1972).
We considered a similar question in Shedd v. State, 228 Miss. 381, 87 So.2d 898 (1956), a prosecution for grand larceny, wherein the Court stated:
Shedd aided and abetted in the commission of the crime. The use of the words "conspired together" in the instruction for the State was, we think, synonymous with the forming of a common design and purpose, and was not used in its limited technical, legal sense of a conspiracy as a misdemeanor. So when considered in this manner, the instruction properly advised the jury under the facts that, if it believed that the woman and Shedd formed a common design and purpose to steal the money of Jenkins and that in pursuance of that common design the woman feloniously stole the money, then Shedd is guilty as charged. Compare Gibbs v. State, [22] Miss. [1] 1955, 77 So.2d 705. [Emphasis added]
Shedd, 228 Miss. at 386-87, 87 So.2d at 900.
Any alleged deficiency in the instructions on the matter of advising the jury of the concepts of aiding and abetting and specific intent were more than cured by two other instructions submitted to the jury. Instruction No. S-1 required that, before the jury could convict, it find beyond a reasonable doubt that Malone
acting in concert with others, ... did unlawfully, wilfully and feloniously, commit an assault ..., and with the unlawful and felonious intent to steal, he the said Frank Malone, acting in concert with others, did then and there unlawfully, wilfully and feloniously take, steal and carry away... .
In pertinent part, Instruction No. D-7 instructed the jury that it should acquit Malone unless it found beyond a reasonable doubt that Malone had
feloniously and intentionally engaged in concert with others by aiding and abetting them before the alleged crime, ... .
*365 As all surely know by now, we do not review jury instructions in isolation. Rather, we read all instructions as a whole to determine whether the jury has been correctly instructed. Not every point involved in a case must be included in every instruction given. Clayton v. Thompson, 475 So.2d 439, 445 (Miss. 1985). Assuming arguendo that Instruction C.00 is less than perfect, we find that the instructions given the jury as a whole fairly and adequately state the law and that reversal would be inappropriate. Robinson v. State, 473 So.2d 957, 963 (Miss. 1985); Byrd v. F-S Prestress, Inc., 464 So.2d 63, 66 (Miss. 1985); Robinson v. State, 418 So.2d 749, 757 (Miss. 1982); Washington v. State, 341 So.2d 663, 664-65 (Miss. 1977); Rayburn v. State, 312 So.2d 454, 456 (Miss. 1975). More specifically, a combined reading of Instruction Nos. C.00, S-1 and D-7 fairly present all issues warranted by the evidence and inherent in the charge of accessory before the fact of armed robbery. Miss. Code Ann. §§ 97-3-79 and 97-1-3 (1972).

IV.
Malone next assigns as error the trial court's failure to sustain his objection to the district attorney's statement that Marilyn Page would plead guilty to the crime of armed robbery. This assignment of error arises from the following exchange which took place in the course of final argument to the jury:
BY MR. NECAISE [district attorney]:
This is no excuse for Marilyn Page. And I want to say this to you people in Hancock County, as sure as I'm standing here, talking to you, before all of these cases are over, Marilyn Page is going to walk into this courtroom, I assume, and plead guilty to armed robbery. And when she does 
BY MR. HAAS: (Interposing)
Your Honor, we object to that.
BY MR. NECAISE:
 The Court has no 
BY THE COURT: (Interposing)
Overruled.
BY MR. NECAISE:
The Court has no alternative, well, I think she would have to plead guilty, on what she said, on her own testimony. She'd be foolish not to. But, when she walks in here, I can't recommend probation for her on armed robbery. And I'll tell you people this, this case will not be reduced, she will stand here and plead guilty to armed robbery. And his Honor has got to sentence her to the Penitentiary. He don't have any choice. He can't put her on probation. A person convicted of armed robbery is not entitled to probation. She's going to have to serve some time and it will be a sentence that his Honor will set for her because she pleads guilty. So, don't worry and believe what counsel is trying to make you believe, that we are going to use her to catch them and then turn her loose. That's not going to happen. She's already served a lot more time than a bunch of them has and she's going to serve a lot longer.
Malone argues that these statements were made (1) to support the previous testimony of Marilyn Page and (2) to convince the jury that Malone was guilty by association. Malone cites cases in which this Court has held it reversible error to introduce evidence or testimony that a co-indictee has been convicted of committing the same offense that the defendant is on trial for. Henderson v. State, 403 So.2d 139, 141 (Miss. 1981); Ivy v. State, 301 So.2d 292, 293 (Miss. 1974); McCray v. State, 293 So.2d 807, 808 (Miss. 1974); Buckley v. State, 223 So.2d 524, 528 (Miss. 1969). The gist of these opinions is that knowledge of the co-indictee's charge and conviction will encourage the jury to find the defendant guilty by association.
The State responds to this assignment of error claiming that the D.A.'s remarks were justified by and invited by comments made by defense counsel in his closing argument:
Keep in mind, now, that Marilyn Page, the admitted, the only person that actually struck and admitted she struck Virginia *366 Guilbeau, has not been tried yet. Has not even been tried. She's just going to pop them off, one at a time, snap, snap, snap. Right down the line.
* * * * * *
All right. So, Marilyn Page is going to save her skin. And that's exactly what she did. She came in and she said Jim Conley knew Mrs. Guilbeau. She said it all along. Mastermind. Came over here, tried Jim Conley, star witness for the State. And she hasn't been tried yet. No deal made for Marilyn Page yet. No deal yet. No deal. She hasn't testified in all the trials yet.
* * * * * *
So, here we come up to Frank, to Frank Malone's trial. They put on Marilyn Page, the star witness. She's still saving her skin. And she makes a good witness now. You make a good witness now. You make a good witness.
Seen in context, the prosecuting attorney's remarks were in legitimate response to argument made by defense counsel. Therefore, the district attorney's comments predicate no error. Booker v. State, 449 So.2d 209, 219 (Miss. 1984); Baker v. State, 455 So.2d 770, 774 (Miss. 1984); Gilliard v. State, 428 So.2d 576, 584 (Miss. 1983); Cannon v. State, 190 So.2d 848, 852 (Miss. 1966).

V.
Finally Malone argues that the guilty verdict returned by the jury is contrary to the overwhelming weight of the evidence. If we correctly appreciate his point, Malone is not making an attack on the legal sufficiency of the evidence to undergird the verdict of guilty. Rather, his challenge goes to the weight of the evidence. When he does this, he necessarily assigns as error the trial judge's refusal to grant his motion for a new trial.
Under our practice, the trial court, in its discretion, may grant a new trial if it deems such is required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Rule 5.16, Unif.Crim.R.Cir.Ct.Prac.; Winters v. State, 473 So.2d 452, 461 (Miss. 1985); Neal v. State, 451 So.2d 743, 760 (Miss. 1984). Such a motion is addressed to the sound discretion of the trial court. Williams v. State, 463 So.2d 1064, 1068 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 799 (Miss. 1984). As a natural corollary of this rule, we will reverse the trial judge's denial of a new trial only where we are convinced that he has abused his discretion.
Having due consideration for the controlling substantive rules of law and their application to the evidence recited at the outset of this opinion, and regard as well for the discretionary nature of the motion for a new trial and the concomitant limitations upon our scope of review, this assignment of error must be denied. Accepting as true the evidence favorable to the State requires acceptance of the testimony of Marilyn Page that Malone masterminded the crime, the testimony of Robert Stewart that corroborated the events of the day of the crime as told by Marilyn Page, and the testimony of Malone himself placing himself with the co-defendants before the fact and with the stolen jewels on the evening of the crime. We regard it as a most reasonable inference that Malone was in this armed robbery up to his neck.
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence, to allow it to stand would be to sanction an unconscionable injustice. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system. Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). This assignment of error is denied.
CONVICTION OF ARMED ROBBERY AND SENTENCE OF ELEVEN (11) YEARS IMPRISONMENT AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Malone's version of the facts was obviously not believed by the jury. We present it here in the interest of a fuller understanding of Malone's side of the case and of the legal issues discussed below.
[2] The four others indicted were Dale Bissett, Dayanan Dumont [Sam] Buchanan, Robert Stewart and James Conley. James Conley was tried and found guilty of armed robbery, his conviction was affirmed by this Court. Conley v. State, 480 So.2d 526 (Miss. 1985).