# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00429-SCT

### CONSOLIDATED WITH

## NO. 92-KP-00143-SCT

*EDGAR RAY DICKEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/2/1991 |
| TRIAL JUDGE: | HON. JOE N. PIGOTT |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | M. A. BASS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 06/13/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/2002 |

## BEFORE SMITH, P.J., CARLSON AND GRAVES, JJ.

## SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1. Edgar Ray Dickey was convicted in 1991 in the Circuit Court of Copiah County of manslaughter in the death of Dominique Amos, his girlfriend's infant. Circuit Judge Joe N. Pigott sentenced Dickey to twenty (20) years in the custody of the Mississippi Department of Corrections.

¶2. Dickey was denied an out-of-time appeal by the circuit court, and this Court affirmed that denial in *Dickey v. State*, 662 So. 2d 1106 (Miss. 1995). Dickey then sought federal habeas corpus relief, which was granted by the federal district court and affirmed by the Fifth Circuit. *Dickey v. Booker*, 245 F.3d 791 (5th Cir. 2000)(table)(No.99-60204).

¶3. It is from this grant of habeas relief that Dickey now pursues this appeal. The present appeal, No.

2001-KA-0429-SCT, has been consolidated with the record on Dickey's prior appeal to this Court, No. 92-KP-00143-SCT. Dickey was paroled and released from prison on November 18, 1999. Dickey is currently on parole.[1]

## FACTS AND PROCEEDINGS BELOW

¶4. On the morning of July 24, 1990, Tammy Amos, Dickey's girlfriend, left her 17-month-old daughter, Dominique, in Dickey's care. Tammy left Dominique with Dickey at a friend's house in Pocahontas, Mississippi, and Dickey then took Dominique to his house in Hazlehurst, Mississippi. Tammy had a job interview in Jackson the following day and planned to return for Dominique after the interview.

¶5. Tammy arrived at Dickey's home the evening of July 25, 1990. Tammy found Dominique on a bed, apparently sleeping, and Dickey instructed her not to wake Dominique. Tammy noticed bruising on Dominique and asked Dickey about it. Dickey responded that Dominique had fallen while playing. Dickey then left the house, and Tammy attempted to wake Dominique. Tammy was unable rouse the child. Neighbors drove Tammy and Dominique to a local hospital, and Dominique was then transferred to University Medical Center (UMC) in Jackson. Her treating physicians testified that Dominique had extensive bruising on the head, upper extremities, chest, back and genital area. She was diagnosed as having a severe brain injury, which caused hemorrhaging. Dominique was placed on a ventilator, which was removed two days later. Dominique died on July 27, 1990. The cause of death was determined by autopsy to be cerebral trauma.

¶6. Dickey was indicted for murder on November 13, 1990. The jury returned a verdict of guilty of manslaughter, and Dickey was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Dickey's subsequent Motion for Judgment Notwithstanding the Verdict, or in the alternative, for New Trial was denied.

¶7. On appeal, Dickey raises two issues and asks this Court to reverse and render his conviction:

**I. WHETHER THE TRIAL COURT ERRED BY DENYING DICKEY'S MOTION FOR DIRECTED VERDICT.**

**II. WHETHER THE FAILURE TO RECORD THE VOIR DIRE, OPENING STATEMENTS, AND CLOSING ARGUMENTS HAS RENDERED DICKEY UNABLE TO ASCERTAIN ERRORS COMMITTED THEREIN AND CONSTITUTES REVERSIBLE ERROR.**

## DISCUSSION

### I.

¶8. Dickey contends that the evidence at trial was legally insufficient to support the guilty verdict. Therefore, Dickey argues that the trial court erred in failing to grant his motion for directed verdict and in refusing his request for a peremptory instruction. Dickey's brief contains little argument on this issue. He merely states the applicable standard of review and states that the evidence presented at trial was insufficient.

¶9. The legal sufficiency of the State's evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction, and a motion for a JNOV; the standard of review of each is essentially the

same. *Ellis v. State*, 778 So. 2d 114, 117 (Miss. 2000) (citing **Butler v. State**, 544 So. 2d 816, 819 (Miss. 1989)). In addition to viewing the evidence in the light most favorable to the State, this Court must accept as true all the evidence which supports the guilty verdict without weighing the credibility of the evidence on appeal. *Id.* (citing **Davis v. State**, 568 So. 2d 277, 281 (Miss. 1990); **Malone v. State**, 486 So. 2d 360, 366 (Miss. 1986)). The prosecution receives the benefit of all favorable inferences that may reasonably be drawn from the evidence. **McFee v. State**, 511 So. 2d 130, 133-34 (Miss. 1987). This Court will reverse only where reasonable and fair-minded jurors could only find the accused not guilty. **Wetz v. State**, 503 So. 2d 803, 808 (Miss. 1987).

¶10. Dickey contends that no reasonable jury could have found him guilty of manslaughter. This assignment of error is without merit. Though the evidence against Dickey was circumstantial, the evidence was sufficient for the jury to find Dickey guilty beyond a reasonable doubt. This Court has stated that to sustain a conviction on circumstantial evidence, every other reasonable hypothesis of innocence must be excluded. *Underwood v. State*, 708 So. 2d 18, 35 (Miss. 1998) ("[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt."). The crux of Dickey's argument at trial was that Dominique was either injured prior to the time Tammy left her in Dickey's care, that Dominique's injuries were caused when Tammy shook her in an attempt to wake her, or that Dominique fell out of the bed and hit her head.

¶11. Dickey had sole custody of Dominique for over 24 hours prior to her arrival at the hospital. Lawrence Smith, Dickey's next-door neighbor, testified that at approximately 3 p.m. on July 25, 1990, he was outside fixing his bicycle when he heard a baby crying from inside Dickey's house and sounds of someone whipping the baby. He testified that he recognized Dickey's voice and heard Dickey say, "Go sit down."

¶12. The State presented the testimony of three physicians who treated Dominique -- Dr. Bob Gannaway at the hospital in Hazlehurst, and Drs. Bonnie Woodall and Elizabeth Griffin at UMC. Dr. Gannaway testified that Dominique's bruises on her head, upper extremities, chest, back, and genital area were fresh, having been inflicted less than 24 hours prior to her arrival at the hospital. Dr. Woodall testified that the bruises were less than 24 hours old and that they were generally all the same age. Drs. Gannaway, Woodall and Griffin each testified that there were no old bruises, healed fractures, nor any other indications of previous abuse.

¶13. The testimony of Dr. Steven Hayne, who performed the autopsy, was consistent with that of the treating physicians. Dr. Hayne also testified that the cause of death was cerebral trauma. He opined that the injury to, and subsequent hemorrhaging in, Dominique's brain was caused by application of a blunt force to the left side of her head, most likely a fist, causing the brain to oscillate back and forth inside the cranial vault. He testified that though he could not exclude shaken baby syndrome as a cause of death, Dominique's injuries were most consistent with blunt force trauma to the left side of the head. He also stated that with shaken baby syndrome, an autopsy usually reveals bleeding between the top of the skull and the brain itself, not bleeding in the brain itself. He stated that Dominique's autopsy revealed bleeding between the top of the skull and the brain as well as bleeding in the brain itself.

¶14. Dr. Woodall testified that at the time Dominique was admitted to UMC, she felt her findings were consistent with shaken baby syndrome, but that the injuries could very possibly have been the result of blunt trauma to the head. She stated that the autopsy report is the best way to determine the cause of death and that she cannot determine what occurred without entering the skull and examining the brain.

¶15. Though Perry Thomas, who was present when Tammy left Dominique with Dickey, testified that he believed Dominique was already injured at the time Tammy left her with Dickey, the other testimony at trial staunchly contradicts Thomas's testimony. Dickey told Tammy and Billy Mangold, the social worker investigating Dominique's death, that Dominique played outside the morning of July 25, 1990. Drs. Woodall, Griffin, and Hayne testified that the fact that Dominique played normally the same day indicates that she had not, at that point, incurred the injury to her brain which caused her death. Dorothy Fisher, with whom Tammy and Dominique lived, testified that she saw Dominique in her diaper on the morning of July 24, 1990, and that Dominique had no bruises on her and played normally. Dr. Hayne testified that Dominique's injuries were not consistent with her mother shaking her in an attempt to wake her and that they were not consistent with a single fall to the floor or sidewalk.

¶16. Certainly, Tammy's credibility as a witness was brought into question when defense counsel confronted her with her prior statement that she spanked Dominique the afternoon of July 25, 1990, and that Dominique then fell out of bed and hit her head. Tammy testified, however, that she was threatened by Dickey and instructed to give this account in her prior statement. Upon review of the trial court's denial of a directed verdict, this Court must accept as true all the evidence which supports the guilty verdict without weighing the credibility of the evidence on appeal. *Ellis v. State*, 778 So. 2d at 117. And, again, Dr. Hayne's testimony indicates that Dominique's injuries were inconsistent with a single fall to the floor.

¶17. We find that the evidence was clearly sufficient to support the jury's verdict. Thus, this assignment of error is without merit.

## II.

¶18. Dickey also contends that the trial court failed to record the jury voir dire, opening statements, and closing arguments of counsel. He states the trial court's failure to complete the record was prejudicial to his right to review and appeal any error contained therein. Dickey's brief contains no supporting authority or argument for this assignment of error. Consideration of this issue is, therefore, procedurally barred. *Mitchell v. State*, 792 So. 2d 192, 202 (Miss. 2001) (citing *Holland v. State*, 705 So. 2d 307, 329 (Miss. 1997)).

¶19. Procedural bar aside, Dickey fails to demonstrate any error in the proceedings and to even attempt to show how he might have been prejudiced by the absent portions of the transcript. It is the responsibility of the appellant to provide an accurate account of the proceedings in accordance with Rule 10 of the Mississippi Rules of Appellate Procedure. *Burns v. State*, 729 So. 2d 203, 212 (Miss. 1998). There is no indication in the record that Dickey made a pre-trial motion that all proceedings, including voir dire and counsel's statements to the jury, be recorded and transcribed for his benefit on appeal. *See id.* at 211-12 ("When a trial judge grants a motion to have all proceedings recorded, it becomes at least partially the responsibility of the granting court to do everything possible to ensure the court reporter complies with the order.") Furthermore, at no point in the proceedings did counsel for Dickey object to the court reporter not recording the voir dire or statements of counsel to the jury.

¶20. On appeal, Dickey is represented by different counsel than at trial. There is no indication in the record or in Dickey's brief that he has attempted to reconstruct the record by contacting the trial attorney or the court reporter. Dickey makes no attempt to state what errors might have occurred in the missing portions of the record. It is the responsibility of the defendant to prove how he might have been prejudiced by the missing portions of the trial transcript. *Watts v. State*, 717 So. 2d 314, 317 (Miss. 1998). Where the

appellant does not claim any error from the proceedings which are missing from the record and, therefore, fails to show he is prejudiced by the absent portions, reversal is not required. *Id.*

¶21. This issue is procedurally barred and, alternatively, without merit.

## <u>CONCLUSION</u>

¶22. This Court finds that both assignments of error are without merit. For the foregoing reasons, the circuit court's judgment is affirmed.

¶23. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE TO RUN CONCURRENTLY WITH THE SENTENCE IN CAUSE NUMBER 14, 016.**

**PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**

1. The State argued before the Fifth Circuit that Dickey's release from prison moots his appeal. The court rejected that argument. *Dickey*, slip op. at 5.