593 So.2d 7 (1991)
Bridgette DOTSON
v.
STATE of Mississippi.
No. 07-KA-59546.
Supreme Court of Mississippi.
December 31, 1991.
*8 Caroline R. Moore, Eupora, Luke J. Schissel, Greenwood, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Bridgette Dotson was convicted of manslaughter for the death of her boyfriend, Bernard Cates, and the court sentenced Dotson to fourteen (14) years to the custody of the Mississippi Department of Corrections. Dotson appeals her conviction and sentence to this Court alleging reversible error occurred in the court below due to the State's failure to comply with its discovery obligation of Unif.Crim.Cir.Ct.Prac. 4.06. After a careful review of the facts of this case and the law, we agree. Consequently, we reverse Dotson's conviction for the crime of manslaughter and remand the same to the Leflore County Circuit Court for a new trial.

FACTS
For the most part, the facts of this case are uncontroverted, and we review only the basic facts which are necessary to our disposition of the case.
During a heated argument, Bridgette Dotson, age 16 or 17, stabbed her boyfriend, Bernard Cates, age 20, on the night of October 31, 1986; and Cates died approximately an hour later at a Greenwood hospital. On the night of the stabbing, Dotson was taken into custody and charged with murder. Dotson defended on the grounds of self-defense. At trial, the court granted a manslaughter instruction in addition to the instruction on murder, and the jury returned a conviction for manslaughter.
Bridgette Dotson and Bernard Cates had been dating for a little over two years, and there was much testimony that their relationship was, at times, stormy. In fact, on the night prior to Bernard's death, the couple had a bitter quarrel, to which there were at least three witnesses. On the fateful night of May 31, 1986, Dotson went to Cates' neighborhood where she found Cates walking with another girl. A heated argument ensued between Cates and Dotson in the street in front of Cates' house. *9 According to Dotson, Cates started swinging at her in an attempt to jab her in the face. Dotson swung back with a knife, and at some point she cut Cates in the chest. The fateful blow was a two and three quarter (2 3/4) inch long slash to the lower chest which cut through Cates' heart.

I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A NEW TRIAL AFTER LEARNING THAT THE STATE HAD NOT DISCLOSED TO DEFENSE COUNSEL PHYSICAL EVIDENCE WHICH HAD BEEN REQUESTED BOTH IN A MOTION FOR DISCOVERY AND IN A PRE-TRIAL HEARING.
Dotson alleges that the State committed a discovery violation for failing to produce the victim's shirt. Dotson contends that the shirt was important to her defense and argues that she made defensive slashing motions toward Cates to keep him away from her rather than offensive slashing motions with the design of causing serious bodily harm.
When Dotson filed her motion for discovery under Uniform Rule 4.06 in June of 1986, she made a blanket request for all information and evidence required to be furnished under the rule, and she made specific requests for the following:
4. A list of all tangible objects which were obtained during the investigation of this cause including but not limited to any object obtained from the residence or person of the defendant;
* * * * * *
6. Exhibit any physical evidence and photographs to be offered in evidence;
* * * * * *
10. All information of whatever form, source, or nature which may lead to evidence which tends to exculpate this defendant, either through an indication of her innocence or through the potential impeachment of any known or potential State's witness, and all information which may be of benefit to this defendant in preparing or presenting the merits of the defense of this defendant at any hearing in this cause... .
This case went to trial on November 12, 1987. After a jury had been selected and the opening statements delivered, the State called its first witness. At this point, the attorneys representing Bridgette Dotson, Mr. Luke Schissel and Ms. Caroline Moore, moved for an in-chambers hearing. According to Schissel and Moore, the State had failed to produce several items of evidence which the defense had not seen. Specifically, attorney Schissel mentioned clothing, photographs of the crime scene, and the knife which the defense team had not seen.
IN CHAMBERS
BY MR. SCHISSEL: Your Honor, the reason I asked that we move to chambers is rather than continually approaching the bench on this issue, the defense is in a dilemma. We anticipate that the prosecution is going to attempt to put physical evidence . . physical evidence into the record before this Court and the jury and we've not seen the first shred of it. We've not seen a knife, we've not seen clothing, we've not seen photographs; and it's my understanding the law is pretty clear that this needs to be presented to us before it's offered for evidence, and that... .
* * * * * *
BY MR. SCHISSEL: ... I never knew it [knife] was here; and the last report we had it was with the Crime Lab and I learned today upon voir dire when the issue came up about stipulation that the knife was in the building. We tried to determine how long it had been here and they didn't know and they were going to look, but I acknowledged the form from the District Attorney's Office November . . following my motion, and on the form there is no disclosure of knife, pictures, clothing of any sort, no physical evidence whatsoever; and as a matter of fact it's my understanding, according to the witness list that was delivered to my office yesterday or the day before, that they intend to introduce as witnesses Mr. *10 Whatley and Mr. Burton and I'm satisfied they are going to attempt to use their statements. We don't have them.
Now a statement of Mr. Moses was furnished and I receipted that as being furnished, although not listed on the form, and certainly we've acknowledged receipt of that. We've acknowledged receipt of statement of Jenette Davidson, and no physical evidence whatsoever.
BY MISS BOUCHARD: There is... .
BY MR. SCHISSEL: Particularly knife, shirt and photographs.
BY MISS BOUCHARD: [FOR THE STATE] There is no physical evidence other than the knife and four photographs.
* * * * * *
BY MISS MOORE: ... yesterday about the four photographs. Now that was the first time I knew about the photographs because they were not listed on the original sheet and, you know, I went back and checked my file because I didn't have any recollection of the photographs and they were not listed on the original sheet that we've had, so I didn't know that the photographs existed.
BY THE COURT: You did not know until yesterday that... .
BY MISS MOORE: Until yesterday afternoon that the photographs existed.
* * * * * *
BY MR. SCHISSEL: Well, Your Honor, I understand what Mr. Carlton is stating. If someone is stabbed, they're stabbed with an instrument. My objection to the introduction of this physical evidence is simple. As to the knife, as to the clothing, if any, as to pictures, if any, they have not been presented to us....
(emphasis added).
The court determined that the Box mandate was appropriate for the problem at hand. Therefore, pursuant to Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring), the court stopped the proceedings long enough for the defense attorneys to review the evidence. See Unif.Crim.R.Cir.Ct.Prac. 4.06(i). After viewing the photographs and the knife, the defense attorneys elected to proceed with the trial. By not requesting a continuance and electing to proceed, the allegation of discovery error is waived by authority of Cole v. State, 525 So.2d 365, 367-68 (Miss. 1987). However, any waiver would pertain to only the knife and the photographs. Despite the fact that Mr. Schissel specifically mentioned the victim's shirt at the impromptu discovery hearing, the State withheld the shirt and strongly suggested that the victim's shirt did not exist in the State's discovery file.
BY MR. SCHISSEL: Particularly knife, shirt and photographs.
BY MISS BOUCHARD: [FOR THE STATE] There is no physical evidence other than the knife and four photographs.
(emphasis added).
The trial proceeded wherein the knife and four photographs were introduced into evidence. In closing arguments before the jury, defense counsel discussed the fact that the State had not introduced the shirt into evidence.
Now the shirt is not here today. We don't know where the shirt is. The shirt's not here, but it sure would have been nice to have seen that shirt to see if there were any other slash marks on the shirt; and, ladies and gentlemen, I submit to you that would have been important evidence in this case, but the shirt's not here.
(Mr. Schissel in Closing Arguments).
At the close of the trial while the jury was deliberating a verdict, Dotson's attorneys discovered the victim's shirt in the State's witness room. The jury convicted Dotson of manslaughter, and within ten days the defendant filed post-trial motions for j.n.o.v. and new trial predicating grounds for a new trial upon the State's discovery violation for not providing the shirt.
First, we address a procedural issue raised by the State. Since the shirt was not "discovered" until the jury was out deliberating a verdict, this fact is not of *11 record in the trial transcript. Furthermore, and for reasons which are inexplicable, both parties concede that at the hearing on the motion for a new trial allegedly held on May 25, 1988, no court reporter was present to transcribe the proceedings. Additionally, the parties were unable to make an agreed statement of the proceedings pursuant to Miss.Sup.Ct.R. 10(d). Nonetheless, Dotson filed an uncertified transcript of the post-trial hearing. The State responded by filing a Motion to Strike the defendant's uncertified transcript since such supplementation violated Miss.Sup.Ct.R. 10(e).
Regarding the State's Motion to Strike, we have two observations. First of all, the motion is well taken. No certified copy of the post-trial hearing exists. In the absence of an agreed statement between the parties, "[a]ny document submitted to this Court for inclusion in the record must be certified by the clerk of the trial court." Miss.Sup.Ct.R. 10(e). Second, the State's motion is, in effect, moot. Despite the absence of a certified transcript of the post-trial hearing, we find the nondisclosure of the victim's shirt sufficiently documented in the record before us. The nondisclosure was raised in the defendant's post-trial motions as well as in the State's response. The defendant's post-trial motion for j.n.o.v. and new trial and the State's response thereto are designated for the record on this appeal. Ergo, this assignment of error is preserved and supported in the record before us.

Standard of Review
The trial court in its discretion may grant a new trial if it deems such is required in the interests of justice or if the verdict is contrary to the law or weight of the evidence. Malone v. State, 486 So.2d 360, 366 (Miss. 1986) (citing Unif.Crim. R.Cir.Ct.Prac. 5.16; Winters v. State, 473 So.2d 452, 461 (Miss. 1985); Neal v. State, 451 So.2d 743, 760 (Miss. 1984)). The motion is addressed to the sound discretion of the trial judge. Malone v. State, 486 So.2d 360, 366 (Miss. 1986) (citing Williams v. State, 463 So.2d 1064, 1068 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 799 (Miss. 1984)). "As a natural corollary of this rule, we will reverse the trial judge's denial of a new trial only where we are convinced that he has abused his discretion." Malone v. State, 486 So.2d 360, 366 (Miss. 1986).

ANALYSIS
We begin with the language of Rule 4.06 and build from there.
(a) Upon written request by the defendant, the prosecution shall disclose to each defendant or to his or her attorney, and permit him or her to inspect, copy, test, and photograph, without the necessity of court order, the following which is in the possession, custody, or control of the State, or the existence of which is known, or by the exercise of due diligence may become known, to the prosecution:
.....
(5) Exhibit any physical evidence and photographs relevant to the case or which may be offered in evidence; and
(6) Any exculpatory material concerning the defendant.
Unif.Crim.R.Cir.Ct.Prac. 4.06 (emphasis added).
In her discovery motion, Dotson asked for "all information of whatever form, source, or nature which may lead to evidence which tends to exculpate this defendant ... and all information which may be of benefit to this defendant in preparing or presenting the merits of the defense of this defendant at any hearing in this cause."
As this Court recently remarked in the case of Hunt v. State, this Court's decisions and interpretation of Rule 4.06 have not been "hallmarks of clarity or consistency." Hunt v. State, 569 So.2d 1200, 1203 (Miss. 1990). However, this case presents no vague or grey areas in the interpretation of Rule 4.06 discovery. In a nutshell, the defendant asked for all physical evidence, and the State withheld the victim's shirt.
On the question of Rule 4.06 duty of disclosure, this Court clarified the State's obligation in Hentz v. State, 489 So.2d 1386 *12 (Miss. 1986). Now, we take this opportunity to reinforce that which we stated in Hentz with a simple message to the bench and bar. Read Hentz! Apply Hentz! This Court explained the application of Rule 4.06 as follows:
We keep in mind that the appellant was indicted for receiving stolen property and that a complete defense to that charge could be that the crime, if any, which appellant should be indicted for and convicted of, is grand larceny. With that premise, the tapes which the State declined to produce or disclose very well may have been exculpatory of the crime of receiving stolen property. An important question in discovery, such as involved here, is who is going to determine whether or not tapes or written instruments are exculpatory or important to the defense, if counsel is unable to see, hear, or know what is contained therein? Is the State attorney the only person who will make that determination? We think not. The Court now declares that as a matter of good practice and sound judgment in criminal cases, prosecuting attorneys should make available to attorneys for defendants all such material in their files and let the defense attorneys determine whether or not the material is useful in the defense of the case. We direct the attention of trial judges to this problem and suggest that they diligently implement this suggestion in order to dispense with costly errors, which might cause reversal of the case. Barnes v. State, 460 So.2d 126 (Miss. 1984); Harris v. State, 446 So.2d 585 (Miss. 1984); Morris v. State, 436 So.2d 1381 (Miss. 1983).
Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986) (emphasis added).
Dotson argues that the shirt would have supported her claim of self-defense depending upon the cuts and slash marks which may or may not be found on the shirt. Dotson alleges that she was defending herself against Cates in a slashing motion of the knife rather than an offensive stab. The mandate from Hentz is clear. Whether or not the shirt is exculpatory is a call for the defense team to make, not the State as it alleges in its brief. The fact that the State elects not to use certain evidence at trial or deems certain evidence as nonexculpatory is of no consequence in fulfilling its Rule 4.06 duty of disclosure. Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986). One import of Hentz was to remove the State from the role of "judge" in determining the discoverability of evidence. Foster, 493 So.2d at 1308.
In cases which have focused on the discovery of witness statements rather than physical evidence, this Court has emphasized the State's obligation to make available all materials to the defense team.
More recently, we have held that prosecuting attorneys should make available to attorneys for the defense all materials, whether written or recorded, in order that the defense may determine whether or not the material is useful to the defense of the case. Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986).
Williamson v. State, 512 So.2d 868, 882 (Miss. 1987) (emphasis in original). See Welch v. State, 566 So.2d 680, 683 (Miss. 1990); Bevill v. State, 556 So.2d 699, 714 (Miss. 1990).
Even by the plain language of Rule 4.06, the State's duty to disclose all physical evidence relevant to the case is clear. The State shall disclose "any physical evidence and photographs relevant to the case or which may be offered in evidence...." Unif.Crim.R.Cir.Ct.Prac. 4.06(a)(5) (emphasis added); See Mitchell v. State, 539 So.2d 1366, 1374 (Miss. 1989); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986); Williamson v. State, 512 So.2d 868, 882 (Miss. 1987); Welch v. State, 566 So.2d 680, 683 (Miss. 1990); Bevill v. State, 556 So.2d 699, 714 (Miss. 1990).
In Gallion v. State, 517 So.2d 1364 (Miss. 1987), this Court explained the two-fold purpose of Rule 4.06:
Rule 4.06 serves two dissimilar purposes. The first is to give the defendant an opportunity well in advance of trial to learn all evidence the State is going to offer in support (sic) its case. Whatever evidence the State proposes to offer to convict him, he is entitled to discover well in advance of trial. This is to prevent surprise or `trial by ambush.'

*13 The other purpose is quite different. The defendant is also entitled to examine and get a copy of any material which would tend to prove him innocent. 4.06(a)(6).
Gallion, 517 So.2d at 1370-71.
The second purpose of 4.06, assessment of exculpatory value, never occurred in the case sub judice. At the very least, it was incumbent upon the State to inform the defendant that the shirt was available for its inspection along with the photographs and knife. Had defendant known of the shirt's availability, she might have elected to move for a continuance pursuant to the Box options rather than waiving the right to move for a continuance and proceeding with trial. The State is in error when it alleges that there was no duty to provide the shirt since the prosecution had no plans to introduce the shirt as evidence. As explained in this opinion, the State's duty of disclosure includes more than that which it plans to use to prove its case.
Finally, we note that Dotson assigns two additional errors. Dotson alleges that the murder weapon was found by the police as a result of an illegally obtained confession and that the court erred in dismissing a juror who had slept through much of the trial and replacing the juror with an alternate. Suffice it to say that we have examined both issues and find them without merit.
In conclusion, for the reasons stated in this opinion we find merit in Dotson's argument that the State violated its discovery obligation for the nondisclosure of the victim's shirt. Consequently, the conviction for manslaughter is reversed and corresponding sentence vacated. We remand the same to the Leflore County Circuit Court for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.