HUGGINS *v.* STATE.*

(In Banc.   Jan. 16, 1928.)

[115 So. 213.   No. 26789.]

1. HOMICIDE. *To convict defendant of murder as coconspirator of one killing to escape after robbery, it was necessary that conspiracy to commit robbery include agreement to kill if necessary.*

To convict defendant of murder as coconspirator of one killing deceased to escape after robbery of deceased's store, it was necessary that joint enterprise and conspiracy should cover not

only design or purpose to commit robbery or larceny, but should extend to and include common purpose and agreement to resist arrest with great violence or kill deceased or other person who interfered with or attempted to apprehend them.

2. HOMICIDE. *Whether defendant was guilty of murder as coconspirator of one killing to escape after robbery held for jury.*

Whether defendant and one killing deceased to escape after robbery conspired to commit larceny in deceased's store and agreed between themselves to resist arrest with great violence, or to kill deceased or any one who might interfere with or attempt to apprehend them, so that defendant would be guilty of murder as co-conspirator, *held* for jury.

3. HOMICIDE. *Evidence of accused's attempted escape from jail held admissible in murder prosecution.*

In prosecution for murder, permitting jailer to testify that while accused was confined in county jail awaiting trial he attempted to escape from jail *held* not error, since it is always permissible to show flight or attempted flight on part of defendant as circumstance tending to show guilt.

4. HOMICIDE. *Instructions in effect that, if defendant and W. agreed to rob store and kill if necessary, and W. killed deceased in carrying out agreement, defendant was guilty of murder held correct.*

In murder prosecution, instructions in effect that, if defendant and W. agreed to rob store of deceased and to kill him if he interfered with them in robbing store or in escaping after robbery, and that in carrying out such agreement W. killed deceased in order to escape, defendant was guilty of murder *held* correct.

*Corpus Juris-Cyc. References:   Homicide, 29CJ, p. 1074, n. 66; 30CJ, p. 211, n. 7; p. 333, n. 46.   As to responsibility of one assisting in robbery during which his companion commits murder, see annotation in 6 L. R. A. (N. S.) 1154; 45 L. R. A. (N. S.) 55; 13 R. C. L. 730; 5 R. C. L. Supp. 706.   Flight as evidence of guilt in criminal prosecution, see annotation in 25 A. L. R. 886; 8 R. C. L. 192; 5 R. C. L. Supp. 451.

APPEAL from circuit court of Lauderdale county.

HON. J. D. FATHEREE, Judge.

Eugene Huggins was convicted of murder, and he appeals. Affirmed.

See, also, 113 So. 352.

*D. B. Holmes, Jr.,* and *Victor W. Gilbert,* for appellant.

After a robbery is over and one of the parties kills in making an escape, a confederate cannot be held for murder unless there was premeditation on his part. A case very similar on its facts to the case at bar was decided by the New York Court of Appeals in *People* v. *Marwig,* 125 N. E. 535. Under the facts of the case the appellant should not have been convicted for murder and he should have had a peremptory instruction.

*J. A. Lauderdale,* Assistant Attorney-General, for the State.

Counsel for appellant cite the case of *People* v. *Marwig,* 125 N. E. 535, which certainly sustains the contention made by the state in the case at bar. In *Osborn* v. *State,* 99 Miss. 410, the court holds that a conspiracy can be proven like any other controverted facts by the acts of the parties, or by circumstances as well as their agreement. See, also, *Street* v. *State,* 42 Miss. 2; 5 R. C. L., p. 1088, par. 37.

Cook, J., delivered the opinion of the court.

At the August, 1927, term of the circuit court of Lauderdale county, the appellant, Eugene Huggins, and one Marion Walton were jointly indicted for the murder of J. J. McCarty. There was a severance and a separate trial of the two defendants, and the appellant was convicted and sentenced to be hanged, and from this conviction and sentence he prosecutes this appeal.

The deceased was shot and killed by Marion Walton; and the appellant was convicted for the murder as a co-conspirator, the theory of the state being that these two defendants went to the store of the deceased, McCarty, for the purpose of robbery or theft; that in furtherance of this design the deceased was shot and killed by Wal-

ton; and that, consequently, the appellant was also guilty of murder.

The proof offered by the state shows, in substance, that the deceased operated a suburban store and gasoline filling station, in the city of Meridian, and lived with his wife and children in rooms at the rear of the store. Shortly after dark on the day of the homicide, Mrs. McCarty went to their living room; just a short time afterwards her husband came into the room and secured his pistol, as he frequently did at night. A little while afterwards, Mrs. McCarty heard someone call her husband out of the store to the filling station, and overheard a conversation between him and some party, who stated that he desired to purchase gasoline to carry to a car nearby. McCarty asked the would-be purchaser to leave a deposit with him to guarantee the return of the can in which the gasoline was to be carried away. While this transaction was going on, Mrs. McCarty heard some one in the store, and upon going to the door between her room and the store she saw the appellant at the cash drawer, from which she afterwards discovered between twenty-five and thirty dollars had been extracted. She called to her husband, and thereupon the appellant fled through the front door of the store by the gasoline tank where McCarty and Walton were standing, and McCarty drew his pistol and fired two shots at the appellant as he fled down the street. McCarty then charged Walton with being implicated in the theft, and, with the gun still in his hand, directed Walton to go into the store and be seated until the arrival of the police. He then directed his wife to telephone for the police.

At the time McCarty shot at the fleeing appellant, John Burns, a witness for the state, was nearby, and he walked up into the front door of the store. Walton, who was then seated about the middle of the store, first told Burns to get out of the door, but when he did not do so, Walton then said, "Look, some one is moving my car." Burns turned to look, and Walton immediately drew his pistol

and shot twice at McCarty, one bullet hitting his arm, and the other entering the side of his head, killing him instantly. Walton then threw his gun on Burns, who dodged behind the door facing, and then fled. He was arrested some time during the next day. McCarty, at the time he was shot, was standing by and leaning on a barrel, with his gun in his hand pointing downward.

On Monday, prior to the killing on Saturday, the appellant sold a pistol to one Mike Thomas for six dollars, and there is testimony to the effect that this pistol belonged to Walton. A few hours prior to the killing, the appellant and Walton went to Thomas' store and repurchased this pistol for six dollars and fifty cents. At the time they purchased the pistol, they had no car, and were walking. Later they were seen on a bridge not far from McCarty's store, and they then had no car. Just prior to the killing, Walton was attempting to buy gasoline for a car, which he represented, was nearby, while the appellant was in the store at the cash drawer. The appellant was detected, and fled. A few moments later Walton shot and killed McCarty.; and a few hours later, he and the appellant were again together at the home of a negro woman in Meridian.

The appellant and Walton were both arrested on the following day, and afterwards the appellant made a confession to certain officers, which confession was shown to have been freely and voluntarily made, and the admissibility thereof is not challenged. In this confession, he stated that he and Walton purchased from Mike Thomas the pistol which he had previously sold to Thomas; that shortly after purchasing this pistol, they decided to rob some one; that they later went to McCarty's store and bought some lunch, their purpose in doing so being to view the situation in the store; that they came out of the store and sat on a railroad track nearby to eat this lunch; and that while they were eating, they made their plans to rob the store. The plan which they agreed upon, as detailed by the appellant, was that, for the pretended pur-

pose of purchasing gasoline. Walton was to call McCarty out to the gas pump in front of the store, while he, the appellant, was to go in the store and rifle the cash drawer and steal whatever else he could. He further stated that they carried this plan out; and also, that they agreed to kill McCarty, or any one else who interfered with them or attempted to prevent them from escaping.

Over the objection of the appellant, the county jailer was permitted to testify that, while the appellant was confined in jail, he attempted to break out and escape from custody. The appellant did not testify, and no testimony was offered in his behalf.

For a reversal of this cause, the appellant assigns three alleged errors:

(1) The court erred in not granting him a peremptory instruction.

(2) The court erred in admitting the testimony of the jailer in reference to appellant's effort to escape from jail.

(3) The court erred in granting two instructions in behalf of the state.

In support of the first assignment of error, the appellant contends that the proved facts and circumstances, together with the confession of appellant are insufficient to warrant a conviction of the appellant for murder. In order that this appellant might be held to be guilty of the murder, it was necessary that the joint enterprise and conspiracy should cover not only a design or purpose to commit the robbery or larceny, but should extend to and include the common purpose and agreement to resist arrest with great violence, or kill the deceased or other person who interfered with or attempted to apprehend them. If they had only the common purpose of committing larceny, and the killing of the deceased by Walton was "merely the result of the situation in which he found himself, and proceeded from the impulse of the moment, without any previous concert," the appellant would not be guilty of the murder. This doctrine is an-

nounced in 1 Bishop's New Criminal Law, par. 634, in the following language:

"Where two have committed a joint larceny, if one of them wounds an officer who is attempting to arrest both, the other cannot be holden with him for the wounding unless they conspired, not only to steal, but to resist also with extreme violence any who might endeavor to apprehend them."

The case of *People* v. *Marwig,* 227 N. Y. 382, 125 N. E. 535, 22 A. L. R. 845, states this doctrine in the following language:

"The joint enterprise or conspiracy to commit robbery or larceny must also have extended to and covered the escape or 'get-away' as it is called. To make one liable for the acts of the other it must have been the intention of the parties not only to aid and assist in the commission of the main felony but also to act mutually and aid each other in the escape. In other words, at the time of the rescue the parties must then have been conspirators. *Ruloff* v. *People,* 45 N. Y. 213, 217. The court there said: 'When one was detained, being overcome by the opposition, the others returned at the call of their comrade, and the only one in condition to do so, deliberately shot Merrick, who was preventing the escape of one of the confederates, and was cautioned by that confederate, when about to shoot, not to shoot him. The jury were authorized to infer that this act was within the general purpose of the confederates. They may have desisted from their larcenous attempts, and yet the full purpose of the combination not have been carried out so long as one of the party was detained and held a prisoner.' "

In the English case of *Rex* v. *Collison,* 4 Carrington and Payne, 565, upon facts somewhat similar to those involved in the case at bar, the court stated the rule as follows:

"To make the prisoner a principal, the jury must be satisfied, that, when he and his companion went out with

a common illegal purpose of committing the felony of stealing apples, they also entertained the common guilty purpose of resisting to death, or with extreme violence, any persons who might endeavor to apprehend them; but if they had only the common purpose of stealing applies, and the violence of the prisoner's companion was merely the result of the situation in which he found himself, and proceeded from the impulse of the moment, without any previous concert, the prisoner will be entitled to an acquittal.''

We are of the opinion that the facts and circumstances in evidence, together with appellant's confession, were sufficient to warrant the jury in finding that the appellant and Walton conspired to commit larceny in the store, and agreed between themselves to resist arrest with great violence, or to kill the deceased or any one who might interfere with or attempt to apprehend them. This brings this case within the doctrine of the foregoing authorities, and we think the court below was correct in refusing the requested peremptory instruction, and in submitting the issue to the jury.

The next assignment of error is based upon the action of the court in permitting the jailer to testify that, while the appellant was confined in the county jail awaiting trial on the charge of murder, he attempted to escape from jail.

It is always permissible to show flight or attempted flight on the part of a defendant as a circumstance tending to show guilt, and we do not think there was error in the admission of this testimony.

The third and last assignment of error challenges the correctness of two instructions reading as follows:

''The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that Huggins and Walton agreed to rob the store of the deceased, and to kill him if he interfered with them in robbing the store, or in escaping after the robbery of such store in question, and that the defendant did actually

attempt to rob the store in pursuance to such an agreement, if any such there was, and that in further carrying out such agreement, if any such there was, Walton killed the deceased in order to escape, then the defendant is just as guilty under the law as if he had fired the shot himself.

"The court instructs the jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant, Eugene Huggins, and Marion Walton conspired and agreed together to rob the store of the deceased and to kill him, if necessary, in order to rob the store of the deceased or in order to escape after robbing the store of deceased, and that the said Walton and the defendant attempted to carry out such conspiracy, if any such there was, and that pursuant to such agreement and conspiracy, if any such there was, Marion Walton killed the deceased without authority of law, and with the deliberate design to effect his death, then under the law both Walton and the defendant would be guilty of murder."

These instructions correctly and accurately state the law in accordance with the doctrine of the authorities hereinbefore quoted, which we approve, and no error was committed in granting them. Several of the defendant's instructions embodied the same principle. In one of these instructions, the court charged the jury that the burden of proof was on the state to prove beyond every reasonable doubt not only that there was a conspiracy or an agreement between the defendant and Marion Walton to rob the store of the deceased, and to kill, if necessary, to carry out such design, but it was also necessary to so prove that they conspired and agreed to kill, if necessary, to make their escape; and that if the state had failed to so prove either proposition the defendant should be acquitted. In two other instructions granted the defendant, the same doctrine was announced in different language; and when all the instructions are considered to-

gether, we think they fairly and accurately state the law applicable to the facts involved.

The judgment of the court below will therefore be affirmed, and Friday, the 24th day of February, 1928, is fixed as the date for execution of the sentence of the court below.

*Affirmed.*