SHEDD *v.* STATE

No. 40050 June 4, 1956 87 So. 2d 898

*Quitman Ross*, Laurel, for appellant.

*J. R. Griffin*, Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Paul Shedd was convicted in the Circuit Court of the Second Judicial District of Jones County of grand lar-

ceny, and sentenced to five years in the state peniten-
tiary. On this appeal he complains of the theory of the
State as set forth in its only instruction to the jury on
the merits.

■■ ■ There was ample evidence to warrant the jury
in finding appellant guilty, upon the following facts sub-
stantiated by the testimony. On the afternoon of March
25, 1955, O. L. Jenkins, 54 years old and a resident of
Ellisville, went to a place in Jones County known as the
Pine Grove Cafe. He had recently received final pay-
ment on a house which he had sold, and had in his pos-
session about $2,500. He was drunk at the time. He
asked a 17-year old waitress in the place, Mrs. Vernon
McRaney, to count his money for him, which she did.
Jenkins stayed only a short time and left. Mrs. McRaney
told the owner of the place, Cliff Pittman, about Jenkins'
money. Several hours later, around 6:30 P.M., Jenkins
returned. In a few minutes appellant Shedd came in the
place. Pittman told Shedd about Jenkins' money. Shedd
advised Mrs. McRaney to give Jenkins the date which he
had requested at a tourist court, and to get his money.
She then told Jenkins she would do so, and they agreed
on a price of $20. She, Shedd and Pittman were to split
the money three ways. They also decided that Mrs.
McRaney would take Jenkins to the Rock Cabins, a tour-
ist court, and that she would try to get him more drunk
than he was before taking his money.

Mrs. McRaney drove Jenkins to the tourist court,
where they got a cabin. Mrs. McRaney pretended to take
a shower bath, and secretly removed from Jenkins' wal-
let, which was in his trousers hanging on a chair, the
sum of $1,308. On the pretense of going to the office
of the tourist court to get some cigarettes, she left the
cabin with Jenkins' money. At the office, Shedd was
waiting for her. Shedd then drove her back in a car to
the Pine Grove Cafe. He and Mrs. McRaney decided
to double-cross Pittman, so she told Pittman she did

not get any of Jenkins' money. Later Shedd took all of
the money, and refused to divide it with Mrs. McRaney.
So she testified for the State, along with Jenkins, and
Debbs Mauldin, operator of the tourist court. Defend-
ant did not testify and offered no evidence. It is mani-
fest that the evidence was ample to warrant appellant's
conviction of grand larceny, either as a participant in
the crime, or an aider and abettor, which are in effect
the same. ██ ██ Moreover, Code of 1942, Section 1995,
provides that ''every person who shall be an accessory
to any crime, before the fact, shall be deemed and con-
sidered a principal.''

Appellant was indicted for grand larceny. The State
was granted this instruction: ''The court instructs the
jury for the state that if you believe from the evidence
in this case beyond a reasonable doubt that Virna L.
McCranney and Paul Shedd conspired together to take,
steal, and carry away the money of O. L. Jenkins, on
the date and at the time alleged and that in pursuance
to said conspiracy or agreement, if you believe from the
evidence beyond a reasonable doubt there was such a
conspiracy or agreement, that Virna L. McCranney did
wilfully, unlawfully and feloniously take, steal and carry
away the sum of Thirteen Hundred and Eight Dollars
($1308.00) in current and lawful money of the United
States of America, of the value of Thirteen Hundred
and Eight Dollars ($1308.00) consisting of Thirteen One
Hundred Dollar Bills, one Five Dollar Bill and Three
One Dollar Bills, the personal property and money of
O. L. Jenkins, then it is your sworn duty to find the
defendant Paul Shedd guilty as charged.''

Appellant says that this was prejudicial error; that
a conspiracy to commit a felony is a misdemeanor, under
Code Section 2056; and that, although appellant was in-
dicted for grand larceny, this instruction submits to the
jury not that issue but whether appellant was guilty
of a conspiracy to commit a felony, which is a misde-
meanor.

██ ██ The instruction was proper on either one of two theories. ██ ██ If two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all. 11 Am. Jur., Conspiracy, Sec. 8; 15 C. J. S., Conspiracy, Sec. 74. Illustrative of this principle is Huggins v. State, 149 Miss. 280, 115 So. 213 (1928). Huggins and Walton formed a common design and conspiracy to rob a storekeeper. The latter surprised Huggins, shot at him, and Huggins ran away down the street. The storekeeper then ordered Walton to sit down in the store until the police arrived, but before they did so, Walton shot and killed the storekeeper. The above stated principle was applied in affirming a conviction of Huggins for murder, although when the murder occurred Huggins was down the street and away from the premises. The instruction in question properly advised the jury that if the woman and Shedd conspired together to steal Jenkins' money and that "in pursuance of said conspiracy or agreement", if any, the woman stole Jenkins' money, then Shedd was guilty of grand larceny. The common design and the purpose of the confederation or conspiracy was to take the money of Jenkins unlawfully. The theft was the natural and intended result of this common design, for which Shedd was just as guilty as was Mrs. McRaney.

██ ██ Furthermore, all persons present at the time and place of a crime, and aiding and abetting, assisting or advising its commission, are guilty as principals to the crime. 22 C. J. S., Criminal Law, Sec. 88. ██ ██ Aiding and abetting in the commission of a crime involves a community of unlawful purpose at the time the act was committed. It involves some participation in the criminal act, in furtherance of the common design either before or at the time that the criminal act is com-

mitted. McNeer v. State, No. 40,099, decided May 28, 1956.

Shedd falls clearly within this definition of an aider and abettor and therefore a principal in the crime. He and Mrs. McRaney formed this unlawful purpose, at his instance, and in furtherance of the common design and while she was in the tourist cabin, Shedd, who had previously followed her there, was awaiting at the office of the tourist court for her. After Mrs. McRaney stole the money, he drove her away from the scene of the crime and appropriated the money for himself. Shedd aided and abetted in the commission of the crime. The use of the words "conspired together" in the instruction for the State was, we think, synonymous with the forming of a common design and purpose, and was not used in its limited technical, legal sense of a conspiracy as a misdemeanor. So when considered in this manner, the instruction properly advised the jury under the facts that, if it believed that the woman and Shedd formed a common design and purpose to steal the money of Jenkins and that in pursuance of that common design the woman feloniously stole the money, then Shedd is guilty as charged. Compare Gibbs v. State, 77 So. 2d 705 (Miss. 1955).

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.