726 So.2d 1275 (1998)
Falandis ADAMS a/k/a Falandis Mandrell Adams a/k/a "Dink" and Derrick Gathings a/k/a Derrick Gaithings, Appellants,
v.
STATE of Mississippi, Appellee.
Falaunce Burnside and Albert Burnside a/k/a Albert James Burnside a/k/a "Big Burnside", Appellants,
v.
State of Mississippi, Appellee.
Nos. 97-KA-00443 COA, 97-KA-01069.
Court of Appeals of Mississippi.
December 30, 1998.
*1277 Richard B. Lewis, Azki Shah, Allan D. Shackelford, Clarksdale, Attorneys for Appellants.
Office of the Attorney General By Billy L. Gore, Jeffrey A. Klingfuss, Jackson, Attorneys for Appellee.
Before THOMAS, P.J., and COLEMAN and HINKEBEIN, JJ.
HINKEBEIN, J., for the Court:
¶ 1. Falandis Adams, Derrick Gathings, Falaunce Burnside and Albert Burnside were jointly indicted and tried for armed robbery, and they were all convicted of the lesser-included-offense of aggravated assault. Both at trial and on appeal, Adams and Gathings were and are independently represented by counsel, while Falaunce Burnside and Albert Burnside were and are jointly represented. On appeal, they assert the trial court should have granted their motions for directed verdicts upon simple assault or, in the alternative granted their motions for new trials. The essence of all these arguments is that each of the appellants gave statements admitting to striking, kicking, or attempting to strike Earnest Lewis, but they argue that the damage they each individually inflicted upon him was insufficient to convict them of aggravated assault.

FACTS
¶ 2. On the evening of July 27, 1996 after consuming a quantity of alcohol, Earnest Lewis was walking upon a railroad track in Clarksdale, Mississippi when he was struck in the back of the head, severely beaten, and robbed. Lewis testified that as he was walking he heard sounds behind him, and when he turned around, he saw Gathings and Adams, as well as two other young men whom he did not know. He turned away from the four men and was struck by "an object or something real hard," and he lost consciousness "before [he] hit the ground." He could not tell who actually attacked him, but he was sure that approximately ten dollars was missing from one of his pockets.
¶ 3. Evelyn Davis testified that she saw Gathings hit Lewis in the back of the head with a board, and then "the rest of them boys started stomping him." Davis identified the other three appellants as Gathings's accomplices in the attack. Davis testified that at the conclusion of the attack, Gathings reached down into Lewis's pocket.
¶ 4. At various times Davis was inconsistent as to exactly where she was when she viewed the attack. She initially told the police that she had been in her house and looking through a door, and first testified *1278 that she had been sitting on her porch, but later testified that she had been standing on her porch. The appellants contend these discrepancies are material because they contend that Davis's view of the crime scene was at least partially blocked by tall grass and the railroad bed's elevation. However, Davis remained consistent in her testimony that Gathings hit Lewis with a board and her identification of the other appellants. Additionally, the State introduced photographs and testimony of a police investigator tending to show a clear line of sight from Davis's home to the crime scene.

GATHINGS
¶ 5. Gathings argues that he told the police he tried to hit Lewis with his hand one time, but he missed, and he denied hitting Lewis with a board. Gathings argues that since no evidence showed Lewis was treated for injuries to the back of his head, the weight of evidence tended to show Lewis was not struck with the board. Gathings also argues that the jury must not have believed Davis's testimony that he struck Lewis with the board because Davis not only testified he struck Lewis but also that he reached into one of Lewis's pockets, yet the jury rejected the robbery charge and returned a guilty verdict upon the lesser included offense of aggravated assault. Gathings additionally argues that Davis's testimony was unreliable both because her view of the crime scene was blocked by uncut brush and because she was once convicted of forgery.
¶ 6. Aggravated assault occurs when one "attempts to cause or purposefully or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily injury." Miss.Code Ann. § 97-3-7(2)(b) (Supp.1998). A blunt instrument such as club may constitute a dangerous weapon, and this determination is for the jury. Griffin v. State, 540 So.2d 17, 19 (Miss.1989). Gathings contends that no evidence was introduced to show bodily injury occurred to the back of Lewis's head, so he reasons there was insufficient evidence to conclude Gathings used the board as a deadly weapon to assault Lewis. However, Davis testified she saw Gathings strike the blow, and Lewis testified he "felt the lick" from a blow delivered with something harder than a hand and was immediately rendered unconscious. Sufficient evidence was introduced for the jury to find that Gathings did use the board in a way "likely to produce death or serious bodily injury" when he struck Lewis.
¶ 7. Nevertheless, Gathings contends that since the jury apparently rejected Davis's testimony that he reached into Lewis's pocket, it could not have accepted her testimony that he hit Lewis in the head with the board. However, juries are free to accept only part of a witness's testimony. Gandy v. State, 373 So.2d 1042, 1045 (Miss. 1979). As such, the jury could accept Davis's identification of Gathings as the man who hit Lewis with a board without also finding he took money from one of Lewis's pockets. In fact, the testimony and photographs showing whether grass blocked the line of sight from Davis's home to the crime scene gave a logical basis for the jury making these factual distinctions because if the grass was approximately one foot tall, as Investigator Fernando Harris described, Davis might have had difficulty seeing Gathings reach down into the pocket of the unconscious Lewis, but she would still have had a clear view of Gathings hitting Lewis as he was walking. If the jury concluded Davis was mistaken in her belief that she saw Gathings reach inside Lewis's pocket, the jury may still have believed her testimony that Gathings struck Lewis with the board.
¶ 8. Additionally, even if the jury discounted Davis's and Lewis's testimony concerning the use of the board as a dangerous weapon, the jury could still have concluded the assault rose to the level of aggravated assault.
While ordinarily an assault under § 97-3-7(2)(b) involves the use of a weapon the statutory words "or other means likely to produce death or serious bodily harm" *1279 have been used with a definite purpose and meaning in mind. We hold that a violent and aggravated assault committed with one's fists may constitute a crime under § 97-3-7(2)(b).
Jackson, 594 So.2d at 23[1]
¶ 9. Jackson also makes clear that the determination of whether the assault was of sufficient magnitude to constitute aggravated assault is for the jury. Id. at 24-25. Lewis stated his injuries from the beating included surgery to both "reset" one of his eyes and wire his jaw together, which necessitated having several teeth removed. Photographs were introduced graphically illustrating these injuries. This evidence was sufficient to allow the jury to find that the assault was "likely to produce death or serious bodily harm."
¶ 10. Even though the jury could have found an aggravated assault took place without finding the board was used as a dangerous weapon, Gathings asserts he did not take part in the assault because while he tried to hit Lewis, he missed. However, even if the jury believed that Gathings failed to successfully hit Lewis, that does not absolve him from criminal liability in the aggravated assault.
If two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all.
Shedd v. State, 228 Miss. 381, 386, 87 So.2d 898, 899 (1956).
¶ 11. As such, a person who acts in "confederation" with others to violate a law is liable as a principal under either the theory of conspiracy or the theory of aiding and abetting. Id. See also Welch v. State, 566 So.2d 680, 684 (Miss.1990)(stating accomplices must share a "community of intent"); Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989)(overruled on other grounds as being superceded by M.R.E. 616 by Lacy v. State, 629 So.2d 591, 593 (Miss.1993)). Gathings attempts to distinguish his participation in the assault by admitting he tried to strike Lewis as the other appellants kicked and hit the unconscious man. That distinction is no defense because, once the State met its burden of proof concerning either a dangerous weapon or magnitude of the assault, all the State needed to do was produce sufficient evidence tending to show that Gathings entered into the conspiracy of, or aided others in, the aggravated assault of Lewis. That is, once the State produced evidence tending to show Gathings shared the "community of intent", sufficient evidence existed for the jury to find Gathings guilty of aggravated assault. See Welch, 566 So.2d at 684.
¶ 12. Last, the fact that Davis was once convicted of forgery does not negate her testimony. The jury was made aware of the past conviction, and it was for the jury to determine veracity. See, e.g., Gandy, 373 So.2d at 1045. Additionally, Gathings's assertion that Davis did not actually view the assault is without merit because, as discussed in the portion of this opinion reciting the facts surrounding all cases herein consolidated, the State produced evidence tending to show Davis had a clear line of sight to the crime scene, so the jury could conclude that she did in fact see Gathings strike Lewis with a board.
¶ 13. A motion for a directed verdict or motion for judgment notwithstanding the verdict is properly denied when credible evidence could lead reasonable jurors to return the verdict. May v. State, 460 So.2d 778, 780 (Miss.1984). A motion for a new trial is directed to a trial court's discretion and may be granted when the verdict is *1280 contrary to the weight of the evidence or when justice so requires. Id. The evidence introduced by the State was such that the jury could find either that Gathings assaulted Lewis with a dangerous weapon or that Gathings took part in an aggravated assault upon Lewis. In either case, the trial court did not err in denying the motions for judgment not withstanding the verdict and for a new trial.

ADAMS
¶ 14. In his statement to the police, Adams admitted he took part in beating Lewis in that he kicked Lewis one time. However, he argues his blow to Lewis was no more than simple assault because he was wearing a tennis shoe and could not have inflicted much injury. There is no contention that anything but the assault by the four appellants led to Lewis's injuries. Adams's argument is literally that he does not know which of the appellants's blows gravely injured Lewis, but it was not the one he struck.
¶ 15. As previously discussed, the evidence introduced could support the jury's finding either that Gathings hit Lewis with a board used as a dangerous weapon or that the injuries to Lewis arose from being hit and kicked by one or more of the appellants and were sufficient to constitute serious bodily injury as required for conviction for aggravated assault. See Griffin, 540 So.2d at 19; Jackson, 594 So.2d at 23.
¶ 16. Adams's argument fails to address that the jury was instructed to find that if Adams aided and abetted or acted in concert with the other appellants in committing aggravated assault, the jury was to convict Adams as a principal of that crime. See Shedd, 228 Miss. at 386, 87 So.2d at 899; Welch, 566 So.2d at 684; Sayles, 552 So.2d at 1389. Adams's argument attempts to distinguish his participation in the assault by admitting he kicked Lewis, but did not do so as much, or as hard, as did the other appellants. Gathings made a similar argument blaming the other participants to the assault for inflicting the injuries. As explained earlier in this opinion, the distinction as to which participant struck Lewis the hardest is not material because once the State met its burden of proof concerning either a dangerous weapon or magnitude of the assault, all the State needed to do was produce sufficient evidence tending to show that Adams entered into the conspiracy of, or aided others in, the assault of Lewis. That is, once the State produced evidence tending to show Adams shared the "community of intent", sufficient evidence existed for the jury to find Adams guilty of aggravated assault. See Welch, 566 So.2d at 684. Adams's own statement together with Davis's testimony provided this proof. This evidence was sufficient for the jury to find that Adams acted in conspiracy with, or aided and abetted, the other appellants in committing aggravated assault upon Lewis. The trial court correctly denied the motion for judgment notwithstanding the verdict. See May, 460 So.2d at 780. Additionally, the trial court did not abuse its discretion in denying Adams motion for a new trial. Id.

FALAUNCE AND ALBERT BURNSIDE
¶ 17. In their statements to the police, Falaunce Burnside admitted to striking Lewis, and Albert Burnside admitted to kicking and striking Lewis. In fact, Albert Burnside told the police that blood on his shoe might have come from Lewis's back. Nevertheless, they contend this involvement was insufficient to comprise aggravated assault, and they contend they should only have been convicted of simple assault. Falaunce Burnside's and Albert Burnside's argument attempts to distinguish their participation in the assault by admitting they hit and/or kicked Lewis, but did not do so as much, or as hard, as did the other appellants.
¶ 18. As previously discussed, the evidence introduced could support the jury's finding either that the board was a dangerous weapon or that the injuries to Lewis arose from being kicked and/or hit by one or more of the appellants and were sufficient to constitute serious bodily injury as required for aggravated assault. See Griffin, 540 So.2d at 19; Jackson, 594 So.2d at 23.
¶ 19. Like those of the other two appellants, Falaunce Burnside's and Albert Burnside's arguments fail to address that the jury was instructed to find that if they aided and *1281 abetted, or acted in concert with the other appellants, in committing aggravated assault, the jury was to convict them as principals of that crime. See Shedd, 228 Miss. at 386, 87 So.2d at 899; Welch, 566 So.2d at 684; Sayles, 552 So.2d at 1389.
¶ 20. Falaunce Burnside and Albert Burnside admitted in their statements that they took part in the assault. Davis testified she witnessed them doing so. This evidence was sufficient for the jury to find that Falaunce Burnside and Albert Burnside acted in conspiracy with, or aided and abetted, the other appellants in committing aggravated assault upon Lewis. See Welch, 566 So.2d at 680. The trial court correctly denied the motion for judgment notwithstanding the verdict. See May, 460 So.2d at 780. Additionally, the trial court did not abuse its discretion in denying the motion for a new trial. Id.
¶ 21. THE JUDGMENT OF THE COAHOMA CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT OF ADAMS WITH SENTENCE OF FIFTEEN YEARS, FIVE YEARS SUSPENDED; CONVICTION OF AGGRAVATED ASSAULT OF GATHINGS WITH SENTENCE OF FIFTEEN YEARS, FIVE YEARS SUSPENDED; CONVICTION OF AGGRAVATED ASSAULT OF FALAUNCE BURNSIDE WITH SENTENCE OF FIFTEEN YEARS, FIVE YEARS SUSPENDED; CONVICTION OF AGGRAVATED ASSAULT OF ALBERT JAMES BURNSIDE WITH SENTENCE OF FIFTEEN YEARS, FIVE YEARS SUSPENDED, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO EQUALLY PAY RESTITUTION, IS AFFIRMED. SENTENCES IMPOSED TO RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, KING, PAYNE and SOUTHWICK, JJ., concur.
NOTES
[1] Several cases decided under the precursor to the present § 97-3-7(2)(b) held either that hands and feet could constitute a dangerous weapon under circumstances determined by the jury, or that an assault with hands and/or feet could be of such force as to constitute aggravated assault as determined by a jury. See Blaine v. State, 196 Miss. 603, 608, 17 So.2d 549, 550 (1944); Johnson v. State, 230 So.2d 810, 811 (Miss.1970); Pulliam v. State, 298 So.2d 711, 712 (Miss.1974).