956 So.2d 382 (2007)
Mary SCARBOROUGH a/k/a Mary Eulisa Scarborough a/k/a Mary Eulisa Scarbrough, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00500-COA.
Court of Appeals of Mississippi.
May 15, 2007.
*383 H. Bernard Gautier, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Mary Scarborough was convicted of capital murder pursuant to Section 97-3-19(2)(e) of the Mississippi Code Annotated (Rev.2006). She was sentenced to life without parole in the custody of the Mississippi Department of Corrections. Scarborough argues that the evidence presented at trial proved that she was guilty of no more than being an accessory after the fact and that the judge, by referring to the death as "murder" during the trial, committed reversible error. Aggrieved, Scarborough appeals, arguing:
I. WHETHER THE VERDICT IS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. WHETHER THE LOWER COURT ERRED BY REFERRING TO THE KILLING AS MURDER.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Mary Scarborough and Dorian Johnson had been seeing one another for approximately two years before his death. They had an ongoing sexual relationship wherein Johnson would give Scarborough money and pay her bills in exchange for sexual contact. Johnson was in his fifties and Scarborough was seventeen years old. Johnson also suffered from paralysis on the entire right side of his body due to a stroke.
¶ 4. Scarborough claims that she attempted to end her sexual relationship with Johnson after he became aggressive with her. A few months before the night in question, Scarborough's ex-boyfriend, Anthony Booker, told Johnson to stay away from Scarborough. The men got into an argument, and Johnson received several stitches after Booker punched him in the head.
¶ 5. Scarborough claims that Johnson refused to end their sexual relationship and began to stalk her. She therefore enlisted the help of her friends, Booker and Shawn Davis, to scare Johnson into leaving Scarborough alone. A few weeks prior to the night in question, Scarborough, Booker and Davis concocted a plan to rob Johnson. The plan was to lure Johnson to a park in Moss Point under the pretext of smoking marijuana and then rob and scare him. Davis stated that he mentioned killing Johnson, but that Scarborough told him to "stop playing."
¶ 6. Davis said that the three decided that Scarborough and Davis would meet with Johnson at the park, smoke marijuana and start an argument in order to distract him. Booker would remain out of sight until he received a signal to enter into the fray. All three would then rob Johnson.
¶ 7. On the night of December 30, 2002, Davis called Johnson, telling Johnson that *384 he and Scarborough had been in an argument, and asked Johnson to pick him up to go smoke marijuana. Scarborough and Booker drove in Scarborough's car to the park and waited for Johnson and Davis to arrive. When Johnson arrived, Scarborough parked her car behind Johnson's Jeep. Davis exited Johnson's car and spoke briefly to Scarborough and Booker. Then, Davis and Scarborough went over to Johnson's car, got in, and all three began to smoke marijuana. At some point, Davis burned Johnson's neck with a cigar but because Johnson was paralyzed on that side, he did not feel it. Davis then burned Johnson on the other side of his neck. Davis stated that Scarborough then flashed the interior lights of the Jeep on and off, which signaled Booker to come over.
¶ 8. Booker walked up to Johnson's car, opened the driver's side door and began shouting at Johnson. Davis held a knife to Johnson's throat and Davis and Booker pulled Johnson from the vehicle. Johnson retrieved his cell phone and called his sister who lived in North Carolina. She overheard the altercation and would later testify as to what she heard.
¶ 9. Outside the vehicle, Booker and Davis beat and kicked Johnson. During the beating, Johnson's head hit a large wooden pole in the ground and he was briefly knocked unconscious. Davis and Booker continued to severely beat Johnson. During the fracas, the knife was dropped and Scarborough picked it up and put it in her car. The two men then enlisted the help of Scarborough to put Johnson back in the Jeep to take him to another location. Thinking Johnson was dead, Scarborough helped put Johnson in the Jeep, but stopped when Johnson began moaning.
¶ 10. The group left the park and headed towards a gator pit east of Pascagoula. Scarborough drove her car and followed Booker and Davis who were in Johnson's Jeep. As they drove, Scarborough testified that she could see one of the men in the Jeep continually hitting Johnson. Booker was driving the Jeep and Davis was in the passenger's seat. The pit was closed, so they turned around and went back toward Vancleave. Along the way, they picked up Booker's cousin, Desmond Shields, in Gautier. Shields then drove the Jeep and Booker rode with Scarborough in her car.
¶ 11. The group finally came to Twin Lane Road in Vancleave. Once there, Booker and Davis pulled Johnson out of the Jeep and dragged him under a fence. They continued to savagely beat and kick him. Shields and Scarborough maintain that they merely witnessed the beating. However, at some point, Davis asked Scarborough to give him the knife, to which she complied. Davis then slashed violently at Johnson's face, neck and head.
¶ 12. After Johnson stopped moving, Davis and Booker searched him for money. They took his wallet and ATM cards and, at Scarborough's suggestion, even searched Johnson's underwear for cash. After the group left Johnson for dead, they drove to Scarborough's home. The group attempted to clean Johnson's car of the blood stains and destroy evidence of the altercation. Davis and Booker wiped themselves clean with bleach and water and changed clothes. Booker's and Davis's clothes were also burned. The group then drove Johnson's Jeep to the airport and left it in short-term parking.
¶ 13. Johnson subsequently died from the wounds inflicted upon him. At trial, the coroner testified that Johnson had severe bleeding and swelling around the brain. Johnson also suffered from hemorrhaging from the stab wounds on his face, head and neck, as well as massive hemorrhaging inside the upper part of his body. *385 The coroner stated that Johnson's cause of death was a combination of the head injuries that caused his brain to swell and be surrounded by blood and internal damage to his vital organs.
¶ 14. Scarborough testified that she did not participate in either the robbery or murder of Johnson, and that she did not enter into an agreement to kill Johnson. However, she did admit to observing the brutal scene and to speaking with Davis and Booker beforehand about robbing Johnson. Davis testified that he beat, kicked, and stomped Johnson and cut him with a knife. Both Davis and Booker had been convicted of murder based on the actions involved in this case before Scarborough was brought to trial.
¶ 15. Scarborough was convicted of capital murder by a jury of the Circuit Court of Jackson County on February 2, 2005. She was sentenced to a term of life without parole in the custody of the Mississippi Department of Corrections. Scarborough filed a motion for a judgment of acquittal notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. Both motions were denied.

LAW AND ANALYSIS
I. WHETHER THE VERDICT IS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 16. Scarborough argues that the guilty verdict is against the overwhelming weight of the evidence and that the evidence was insufficient to sustain the verdict.
A. Sufficiency of the Evidence
¶ 17. Scarborough argues that the State did not prove its prima facie case because the evidence was insufficient for a jury to find her guilty. Scarborough maintains that she did not participate in the felony committed or encourage the crime and, therefore, lacked the community of purpose or mens rea necessary to be found guilty of capital murder. She claims that the State did not prove that she was an aider and abetter or an accessory before the fact. We disagree.
¶ 18. This Court evaluates a lower court's ruling on the sufficiency of the evidence based on the evidence before the court at the time the last challenge was made. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Scarborough last challenged the sufficiency of the evidence with her motion for a JNOV. In reviewing the denial of a motion for a JNOV, we must determine whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that [s]he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). All evidence and reasonable inferences to be drawn therefrom are viewed in the light most favorable to the State. McClain, 625 So.2d at 778.
¶ 19. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Scarborough of capital murder with the underlying felony being robbery. The crime of capital murder for which Scarborough was found guilty is as follows, "(2) The killing of a human being without the authority of law by any means or in any manner . . . (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery, . . . or in any attempt to commit such [a] felon[y]." Miss.Code Ann. § 97-3-19(2)(e).
*386 ¶ 20. It is uncontroverted that Scarborough administered no physical blows to Johnson. However, the jury was charged with determining whether Scarborough participated in the robbery of Johnson, not if she actually administered the blows which killed him. If it was determined that she did, in fact, participate in the robbery, then she could have been found guilty under the capital murder statute.
¶ 21. In Mississippi, "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such." Miss.Code Ann. § 97-1-3 (Rev.2006). It has further been stated that "[o]ne who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony." Malone v. State, 486 So.2d 360, 364 (Miss.1986). In Crawford v. State, 133 Miss. 147, 151, 97 So. 534, 534 (1923), our supreme court ruled that in order to be held criminally liable as an aider and abetter in the commission of a felony, one must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime." And it has been further stated that "[i]f two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all." Shedd v. State, 228 Miss. 381, 386, 87 So.2d 898, 899 (1956). As such, a person who participates in the design and plan of committing an unlawful act which is then carried out can be found guilty as a principal under either the theory of conspiracy or the theory of aiding and abetting. Id. See also Welch v. State, 566 So.2d 680, 684 (Miss.1990) (stating accomplices must share a "community of intent"); Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989) (overruled on other grounds as being superceded by M.R.E. 616 as stated by Lacy v. State, 629 So.2d 591, 593 (Miss.1993)).
¶ 22. The evidence presented was sufficient for a jury to find that Scarborough was either an aider and abetter or an accessory before the fact. Shawn Davis testified that he, Booker and Scarborough planned to rob Johnson several weeks before the night in question. He stated that it was Scarborough's idea to meet Johnson at the park under the pretext of getting together to smoke some marijuana. Scarborough herself admitted that the group originally planned to rob Johnson, but that she did not want Johnson hurt. She also admitted that Davis and Booker knew that she might be a beneficiary of Johnson's life insurance policy, and that she had heard that the payment would double if Johnson died from a murder rather than natural causes.
¶ 23. At trial, Davis stated that no one in the group was threatened to follow the plan or tried to abandon the plan. Once Booker and Davis finished beating Johnson, they searched him for money. Scarborough had previously told the men that Johnson received a disability check twice a month and would have money on him. Davis took Johnson's ATM cards and wallet from Johnson's pockets. Scarborough admitted that she told Davis to search Johnson's underwear to look for any additional money.
¶ 24. Johnson's sister, Cheryl Goosbey, testified that when Johnson called her, she listened while Johnson was beaten for approximately ten minutes. She heard two male voices and one female voice during the call. She heard one male remark that he had blood on him. She also heard the female voice say, "Are y'all going to follow me," and "Did you find any money," which *387 proves that Scarborough was very much involved in the robbery. Given the evidence presented, it did not so heavily preponderate against the verdict that a new trial was warranted. Accordingly, we find Scarborough's argument to be without merit.
B. Weight of the Evidence
¶ 25. Scarborough states that in light of the evidence and the outcome of the verdict, the jury "was not composed of reasonable and fair-minded jurors." In effect, she is challenging the weight of the evidence. "Matters regarding the weight and credibility of the evidence are to be resolved by the jury." McClain, 625 So.2d at 778.
¶ 26. Scarborough filed a motion for a new trial, which was denied. A motion for a new trial is addressed to the discretion of the trial court. Bush, 895 So.2d at 844 (¶ 18). The motion should be granted only if the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and will reverse only in exceptional cases where the evidence preponderated heavily against the verdict. Id.
¶ 27. It is undisputed that Davis and Booker beat Johnson, causing his death. Scarborough claims she was nothing more than a mere observer, and as such, could not be found guilty of capital murder. We find this argument to be uncompelling. As stated above, pursuant to the statute, Scarborough could be found guilty of capital murder if the jury found that she participated in the underlying felony, the robbery. Based on the evidence presented, we find that a reasonable jury could have found Scarborough guilty.
¶ 28. First, Scarborough initiated the contact between Johnson and Booker and Davis. She admitted that the original plan was to rob and scare Johnson. She knew when Johnson was paid each month, and told Davis and Booker about the disability checks. Booker and Davis also knew that Scarborough was a potential beneficiary under Johnson's life insurance policy. When Davis searched Johnson for money, Scarborough suggested that he check Johnson's underwear, because she knew that he sometimes kept his money there. Later that night, the group went to an ATM machine and attempted to use Johnson's ATM card. Scarborough gave Davis several numbers to try for Johnson's PIN number, but none worked.
¶ 29. Second, Scarborough was hardly a mere witness to the brutal killing. When the knife was dropped during the beating at the park, Scarborough picked it up and put it in her car. She willingly handed the knife over to Davis in Vancleave and watched as he violently slashed Johnson's face, ears and throat. It appears from the record that Scarborough did nothing to either prevent or stop the men from savagely killing Johnson. Therefore, we find that the jury had enough evidence from which to weigh the credibility of the witnesses and conclude that Scarborough was guilty of capital murder.
II. WHETHER THE LOWER COURT ERRED BY REFERRING TO THE KILLING AS MURDER.
¶ 30. Scarborough claims that by referring to Johnson's death as "murder" during the trial, the judge committed reversible error which prejudiced her from receiving a fair trial. The transcript of the trial reveals the remarks which transpired:
MR. TAYLOR [Scarborough's attorney]: Judge, again. I think the photograph is overly gruesome. It does not in any *388 way  it's not going to be relevant to show that it was necessary to inflict these cuts to do whatever Mr. Shields and Mr. Booker and Mr. Davis did to Mr. Johnson. Again, these are wounds that are inflicted by other defendants who are not here today. And so, it's  I think that it is a very grotesque photograph. It's not going to help this jury decide, did Mary Scarborough, on the day in question, did she kill him, did she rob him, did she aid others in doing that? It's not going to help at all. All it's going to do is inflame this jury, or try to inflame them. And so I object on that basis.
THE COURT: I'm going to  I have seen that photograph before in regard to the testimony to be elicited from Dr. McGarry, and based upon his testimony that this photograph will assist the jury in understanding the corpus delicti of this particular crime, the murder itself. I do not find that the probative  or the prejudicial value of that photograph to be outweighed by its probative value, and your objection will be overruled. It will be received and be admitted as State's Exhibit 18.
¶ 31. Counsel approached the bench, wherein a bench conference was held. Taylor, Scarborough's attorney, made a motion for mistrial due to the judge's characterization of Johnson's death as murder, stating that it was "not murder until such time as the jury says so." Taylor also asked, in the alternative, for the judge to administer a limiting instruction to the jury to clarify the comments made. The judge stated that he was merely responding to counsel's argument regarding the relevancy of the photograph. In addition, the judge stated that he did not recall referring to the death as murder. The judge denied both the motion for a mistrial and the request for a limiting instruction.
¶ 32. As we stated above, Scarborough was charged with the crime of capital murder pursuant to Section 97-3-19(2)(e) of the Mississippi Code Annotated. There was no question as to whether Johnson was murdered or whether Scarborough administered any of the blows which proved fatal to Johnson. The jury was to determine Scarborough's participation in the robbery, which was the underlying felony associated with the murder. Pursuant to Section 97-3-19(2)(e), the killing must have been "done with or without any design to effect death, by any person engaged in the commission of the crime of . . . robbery, . . . or in any attempt to commit such [a] felon[y]."
¶ 33. Furthermore, in his opening statement, Taylor referred to the killing as murder. He stated, "[Scarborough] was not a part of the robbery. She was not a part of the murder. But did she try to help these guys get away with it? Absolutely. She was a witness to a heinous crime." Scarborough's theory of the case was that if anything, she was a mere observer of the killing of Johnson and because she took steps to help Booker and Davis evade arrest after the killing, she could only be viewed as an accessory after the fact.
¶ 34. We find that there was no issue as to whether Johnson was murdered or by whom. The issue for the jury to determine was Scarborough's role in the killing, i.e., whether she was a principal under accomplice liability. The State proved that Scarborough participated in the robbery in which Johnson was killed. Accordingly, Scarborough's argument is without merit and we affirm the lower court's decision.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF CAPITAL MURDER, AND SENTENCE OF LIFE *389 IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.